IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | No. 10-00244-02/05-CR-W-DW |
| BRADLEY COOK, | ) | |
| Defendant. | ) | |

**DEFENDANT BRADLEY COOK'S MOTION TO DISMISS COUNT II
OF THE INDICTMENT AS UNCONSTITUTIONALLY VAGUE
AS INTERPRETED AND APPLIED BY THE GOVERNMENT**

COMES NOW defendant BRADLEY COOK, by and through counsel, and hereby respectfully moves this Honorable Court to dismiss Count II of the indictment, as to Mr. Cook, because 18 U.S.C. § 1591, as interpreted by the government and applied to Mr. Cook, fails to provide fair warning to a criminal defendant and promotes arbitrary enforcement, in violation of the Due Process Clause of the Fifth Amendment.

**MEMORANDUM IN SUPPORT**

Due process requires that a penal statute define a criminal offense: 1) with sufficient definiteness that ordinary people are on notice as to what conduct is prohibited by the statute; and 2) in a manner that does not encourage arbitrary and discriminatory enforcement of the statute. *Skilling v. United States*, 130 S.Ct. 2896, 2927-28 (2010). A criminal statute must provide the public with fair notice of what is prohibited and limit the potential for arbitrary enforcement. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). A law is impermissibly vague if it fails to do either. *Giovani Carandola Ltd. v. Fox*, 470 F.3d 1074, 1079 (4th Cir. 2006). The critical

-1-

question is whether the statute made it reasonably clear, at the relevant time, that the defendant's conduct was prohibited by the statute.

## I. The government's interpretation of § 1591 does not provide adequate notice

Count II of the indictment alleges that Mr. Cook, in violation of 18 U.S.C. § 1591 and 1594, did or attempted to "knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained ... [the complainant][1]," that he "benefitted financially and by receiving something of value from participation in a venture engaged in such acts," and that he did so "knowing that force, fraud, and coercion would be used to cause [the complainant] to engage in a commercial sex act." Based on the government's allegations in the indictment, if §1591 is interpreted as pertaining to Mr. Cook, then this interpretation does not provide fair warning to a defendant as required by Due Process.

The indictment does not allege any facts that show that Mr. Cook was involved in recruiting, enticing, harboring, transporting, providing for, or obtaining the "female victim" for an illegal enterprise. Nor does the indictment allege that Mr. Cook received any financial benefit or items of value from his participation in the alleged enterprise. At best, the indictment alleges that Mr. Cook, on one occasion in a five-year period, gave videos downloaded from the internet to Ed Bagley, Sr., and that at some point in time within that same five-year period Mr. Cook may have seen or participated in sexual performances or acts with the complainant. Mr. Cook contends that these actions do not constitute a "commercial sex act" for purposes of § 1591. *See*

---

[1] Because the government has yet to prove that Bradley Cook has committed any crime, much less any crime against this young woman, he is presumed innocent. Accordingly, it is a logical impossibility for him to be both presumed innocent, and to refer to the young woman as his "victim." She is more properly, therefore, referred to as the complainant, and Mr. Cook will so refer to her henceforth.

-2-

Defendant's Motion to Dismiss for Insufficient Evidence. However, for the sake of argument, and viewed in the light most favorable to the government's position, the indictment merely alleges that Mr. Cook was a "customer" not a "trafficker."[2] Indeed, the government's own news release in this case refers to Mr. Cook as a "customer"of the alleged "trafficker." *See* NEWS RELEASE, Office of the United States Attorney, Western District of Missouri, Trafficker, *Woman Tortured as Slave, Victim of Sex Trafficking and Forced Labor; Four Customers Indicted for Sex Trafficking Conspiracy* ("this indictment illustrates we are prosecuting both the supply and the demand, both the traffickers and their customers ... [t]he indictment states that Stokes, Henry, Noel, and Cook participated in this conspiracy as customers") *available at* http://www.justice.gov/usao/mow/news2010/bagley.ind.htm.

There is no indication from the language of the statute, from legislative history behind the statute, or from prior enforcement patterns that § 1591 was intended to apply to the customers of trafficking victims. The Trafficking Victims Protection Act ("TVPA"), of which 18 U.S.C. § 1591 is a part, is intended to combat those who traffic women and children for commercial sexual exploitation. The TVPA not only imposed stiffer penalties on traffickers, but expanded the definition of trafficking itself. What the Act did not do, however, was to expand the definition of trafficking so far as to include the customers of the traffickers. Section 1591(a) is divided into two subsections, which identify two types of behaviors that qualify as "trafficking." Subsection (1) is aimed at those involved in finding, maintaining, scheduling, and moving the victim so that he or she is available to participate in commercial sex acts, subsection (2) is aimed

---

[2] In arguing that 18 U.S.C. § 1591 is not intended to apply to customers of trafficked victims, Mr. Cook in no way admits to having been a customer of any alleged trafficking venture.

-3-

at anyone who financially or materially benefits from the victim's commercial sex acts. A "customer" of a trafficking victim does not logically fit into either of these definitions. *See United States v. Todd*, 627 F.3d 329 (9th Cir. 2009) ("[t]he statute focuses on those (usually men) who make money out of selling the sexual services of human beings (usually women) they control and treat as their profit-producing property").

Additionally, Section 1591(a)(1), which specifically defines a trafficker as one who knowingly "recruits, entices, harbors, transports, provides, obtains, or maintains" a person for the purposes of trafficking, notably omits one who "patronizes," one who "utilizes," one who "engages," or one who "purchases" from the definition. The latter terms are those more commonly used when regulating the purchasers of commercial sex acts. *See e.g.* Mo. Rev. Stat. 567.030 (prohibiting "patronizing prostitution"); 18 U.S.C. § 2422 (prohibiting traveling across state lines to "engage" in prostitution). The exclusion of customers under § 1591 is further evidenced by additional legislation included in the TVPA, which grants funding to states to encourage them to strengthen state laws aimed at those who engage in the purchase of commercial sex acts. 42 U.S.C. § 14044(c). The intention of these grants is to supplement the TVPA by addressing the demand side at the state and local levels. *See* 2005 U.S.C.C.A.N. 1888.

"No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes." *City of Chicago*, 527 U.S. at 59. Criminal statutes must be interpreted to encompass behavior within their ordinary meaning, as understood by ordinary people. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (criminal statute is void for vagueness if "it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.") (quoting *United States v. Harris*, 347 U.S.

-4-

612, 617 (1954)). The government's interpretation of § 1591 to include defendants who do not fall within the plain language or the Congressional intent of the statute necessarily makes § 1591 unconstitutionally vague, as applied to these types of cases, because it does not give notice that such conduct could fall under the auspice of federal law.

## II. The government's interpretation of § 1591 creates arbitrary enforcement

Beginning in 2009, the United States Attorneys' Office in the Western District of Missouri began using § 1591 to bring sex trafficking charges against several defendants who attempted to purchase sex with underage girls through online advertisements posted by undercover officers as part of an ongoing investigation known as "Operation Guardian Angel." *See United States v. Albers*, 4:09-CR-00078-FJG; *United States v. Childers*, No. 4:09-CR-0079-HFS; *United States v. Cockrell*, No. 4:09-CR-00080-DW; *United States v. Oflyng*, No. 4:09-CR-00084-SOW; *United States v. Doerr*, 4:09-CR-0031-FJG; *United States v. Johnson*, 4:09-CR-00034-DW; *United States v. Mikoloyck*, 4:09-CR-00036-GAF. These cases in the Western District of Missouri mark "the first time the U.S. Department of Justice has utilized the Trafficking Victims Protection Act to prosecute customers who allegedly attempt to pay for sex with children." *Domestic Minor Sex Trafficking: the Prostitution of America's Children: Hearing Before the H. Comm. On Crime, Terrorism, and Homeland Security*, 111th Cong. 122-23 (2010) (statement of Rep. Smith, founder and president of Shared Hope International) (hereinafter "Smith Statement"). The government has been able to bring these charges under § 1591 by stretching the meaning of "obtain" and "entice" under the first prong of the statute to mean "purchase" or "patronize." *Id*.

Interpreting § 1591 in this manner, as argued above, is questionable at best in light of the

language and legislative history of the statute. Now, with Mr. Cook's case, the government is attempting to stretch § 1591 even further to target those who purchase sex from alleged adult trafficking victims. Regulating and prosecuting those who purchase sex from adults has generally been left to state and local law, because such conduct by its nature normally does not involve interstate commerce. Now, with the rise of internet advertising, such activities have taken on an interstate element that creates the potential for more federal regulation. Such regulation, however, needs to come from Congress, not from creative charging on the part of government prosecutors. *See* Smith Statement, 111th Cong. 122-23 (2010) ("[a] clear statement by Congress is needed to enable federal prosecutors to continue to indict the buyers of commercial sex with minors").

Congress has not yet issued this "clear statement," and continuing to allow the expansion of § 1591 beyond its original intent allows government prosecutors to act as legislators, which creates the potential for arbitrary enforcement. *See Grayned v. City of Rockford*, 408 U.S. 104, 107-08 (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."). Mr. Cook's case illustrates that the potential for arbitrary enforcement of § 1591 is not just a potential problem, but has already manifested. Nine years after the TVPA first was promulgated, one United States Attorney's Office began reinterpreting it to include the customers of child sex trafficking victims. Now, eleven years later, this same Office wants to begin using the statute to target customers of adult sex trafficking victims. This Court should not condone the government's attempt to shape § 1591 to fit its litigative strategies or its political agenda. *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) (the "more

important aspect" of the void for vagueness doctrine is "that a legislature establish minimal guidelines to govern law enforcement"). To do so invites the continued subjective and arbitrary expansion of § 1591 which due process forbids.

>  III.     **If this Court accepts the government's interpretation of § 1591, the statute is inherently ambiguous and as such unconstitutionally vague**

A court should, prior to holding a statute unconstitutionally vague, try to construe the statute in a manner that would allow it to remain on the books. *See Skilling*, 130 S. Ct. At 2929-30. Interpreting § 1591 in a manner that does not make it applicable to the customers of trafficked victims comports with the language, legislative history, original intent, and prior enforcement patterns of the statute, and allows the statute to remain on the books. If, however, § 1591 can now be interpreted as pertaining to customers of trafficking victims, it must be declared unconstitutionally vague, because such reinterpretation, over a decade after its initial promulgation, inherently shows the ambiguous and arbitrary nature of the statute.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should dismiss Count II of the indictment charging sex trafficking in violation of 18 U.S.C. § 1591 as unconstitutionally vague as applied by the government to Mr. Cook.

                                            Respectfully submitted,

                                            LAW & SCHRIENER, LLC

                                            */s/ Carter Collins Law*
                                            CARTER COLLINS LAW
                                            MO Bar No. 37890
                                            Attorney for Defendant Cook
                                            141 North Meramec Avenue, Suite 314
                                            Clayton, Missouri 63105

(314) 721-7095 – telephone
(314) 863-7096 – facsimile
ccledmo@schrienerlaw.com – e-mail

The Sandage Law Firm, P.C.
MO Bar No. 46022
Local Counsel for Defendant Cook
4700 Belleview Avenue, Suite 404
Kansas City, MO 64112
816-753-0800
816-531-3939 fax
lance@sandagelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Motion to Dismiss Count II of the Indictment electronically with the Clerk of the United States District Court for the Western District of Missouri to be served by operation of the Court's electronic filing system upon Assistant United States Attorney Cynthia Cordes this 16th day of March, 2011.

*/s/ Lance Sandage*
LANCE SANDAGE