# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-00244-02-CR-W-DW |
| | ) | |
| BRADLEY COOK, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT COOK'S MOTION TO DISMISS COUNT II AS UNCONSTITUTIONALLY VAGUE AS INTERPRETED AND APPLIED BY THE GOVERNMENT

COMES NOW the United States of America, by Beth Phillips, United States Attorney, and Assistant United States Attorney, Cynthia L. Cordes, both for the Western District of Missouri, and offers the following response in opposition of the defendant's "motion to dismiss Count II of the indictment as unconstitutionally vague as interpreted and applied by the government." Because the defendant's "as applied" challenge is procedurally premature prior to trial, it should be denied. However, despite that prematurity, the defendant's motion is also without merit as 18 U.S.C. § 1591 is properly charged in Count II and the statute applies to defendant's criminal conduct.

## Suggestions in Opposition

## I.    Defendant's Claim is Procedurally Premature

The defendant does not make a facial challenge to Count II,[1] but solely challenges the charge as unconstitutionally vague "as applied" to him. The defendant's motion is premature and should be denied.

---

[1] Facial challenges are only proper if the defendant raises a First Amendment claim, or are waged in conjunction with an "as applied" challenge. "[W]here First Amendment overbreadth analysis is not available, a statute will be held unconstitutionally vague 'on its face'

The U.S. Supreme Court has explained:

"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. National Dairy Products Corp.* 372 U.S. 29 (1963); *United States v. Mazurie*, 419 U.S. 544, 550 (1975). *"Such sensitive and fact intensive analysis...should be based only on the facts as they emerge at trial." United States v. Reed*, 114 F.3d 1067 (10th Cir. 1997) (error for court to consider vagueness challenge prior to trial, even upon government's proffer of facts to which defendant did not object). District courts in the Eighth Circuit have denied motions to dismiss based on as applied vagueness challenges. *United States v. Keys*, 390 F. Supp. 2d 875, 885-86 (D.N.D. 2005); *United States v. Haslett*, 2006 WL 17779006, p. 4 (W.D. Mo.); *United States v. Barnett*, 2004 WL 764128, p. 11 (N.D. Iowa).

A challenge to the indictment based on sufficiency of the evidence pursuant to Fed. R. Crim. P. Rule 29(a) needs to be filed at the close of the government's case in chief or at the close of the evidence presented at trial.

Rule 29. Motion for a Judgment of Acquittal

(a) Before Submission to the Jury. After the government closes its evidence of after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

A motion to dismiss an indictment is proper only if it raises an issue of law. Fed. R. Cr. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine *without* a trial of the general issue." (emphasis added). "In a criminal case,

2

the 'general issue' is defined as evidence relevant to the question of guilt or innocence.'" *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010), *quoting United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005).  Thus, if "contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, [Fed. R. Crim. P.] Rule 12 doesn't authorize its disposition before trial." *Id.*  In *United States v. Pope*, the Tenth Circuit recently described the policy supporting this rule: "Even when the court is ultimately responsible for deciding the merits of a legal defense, it is sometimes said evidence adduced at trial can provide a 'more certain framework' for its analysis..." *Id., citing Reed*, 114 F.3d at 1070.  The alternative is a pretrial hearing which functions as a summary trial which will waste the court's time and provide the defendant with an opportunity to depose government witnesses without any legal authority to do so.   Because there is no record of facts in this case, the defendant's motion is premature and should be denied.

## II.    Relevant Charges, Statutes & Elements

Setting aside the defendant's prematurity in filing the argument, the government, in an abundance of caution, offers the response outlined in Section III in opposition to the substance of the defendant's claim.  The following charge, statutes, and elements are relevant to the motion and response in this matter.

3

## A.    Count II of the Indictment

Count II of the superseding indictment charges as follows:

<u>Count Two</u>
(Sex Trafficking by Force, Fraud or Coercion)

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs A through D of Count One of this indictment.

Between on or about February 10, 2004, continuing through on or about February 27, 2009, in the Western District of Missouri and elsewhere, EDWARD BAGLEY, BRADLEY COOK, MICHAEL STOKES, and MARILYN BAGLEY, defendants herein, aiding and abetting one another and others, knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means, a person, namely FV, and benefitted financially and by receiving something of value from participation in a venture engaged in recruiting, enticing, harboring, transporting, providing, and obtaining FV, knowing that force, fraud, and coercion would be used to cause FV to engage in a commercial sex act; and attempted to do so.

All in violation of Title 18, United States Code, Sections 1591(a), 1594, and 2.

## B.    Statutes, Elements & Definitions

18 U.S.C. § 1591 is a part of the Trafficking Victims Protection Act and reads, in relevant part:

(a) Whoever knowingly –

(1) in or affecting interstate or foreign commerce...recruits, entices, harbors, transports, provides, obtains or maintains[2], by any means a person; or

 (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) knowing, or

---

[2]  The December 23, 2008, amendment to 18 U.S.C. § 1591 also added the word "maintains."  However, because the defendant's conduct was both prior and subsequent to the amendment date, the government provided the defendant the advantage of being charged with the language in the older version of the statute.  It is relevant here now, however, because it demonstrates Congress's ongoing efforts to broaden the application of  § 1591.

in reckless disregard of the fact,[3] that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act....shall be punished as provided in subsection (b).

The elements of 18 U.S.C. § 1591, as charged in Count II of the indictment are:

*One*, the defendant knowingly recruited, enticed, harbored, transported, provided, and obtained a person by any means;

*or*

benefitted, financially or by receiving anything of value, from participation in a venture which engaged in an act that recruited, enticed, harbored, transported, provided, or obtained a person by any means;

*Two*, the defendant knew that force, fraud, or coercion would be used to cause the person to engage in a commercial sex act; and

*Three*, the conduct was in or affected interstate commerce.

The term "coercion" is defined as (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process. **§** 1591 (e)(2).[4]

The term "commercial sex act" means nay sex act, on account of which anything of value is given to or received by any person. § 1591 (e)(3).

---

[3]  The language "knowing, or in reckless disregard of the fact" was also added as a part of the Dec. 23, 2008 amendment, as noted in Fn. 1.  Thus, while it deceases the government's burden to prove the defendant's knowledge, because the defendant's conduct was both prior and subsequent to the amendment date, the government charged the older version of the statute that required the government meet a higher burden when proving knowledge.

[4] The definitions of terms in **§** 1591 are included in subsection (c) in the statute enacted in 2008.

The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity. § 1591 (e)(5).

The defendant was also charged with attempt, pursuant to 18 U.S.C. § 1594, which reads, in relevant part: whoever attempts to violate section....1591 shall be punishable in the same manner as a completed violation of that section. A person attempts to commit a crime when: he intended to commit the crime; and voluntarily and intentionally carried out some act which was a substantial step toward committing that crime. Eighth Circuit Model Jury Instructions 8.01 (2009).

Finally, the defendant was also charged with aiding and abetting the offense, pursuant to 18 U.S.C. § 2, which reads, in relevant part: whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal. A person aids and abets a crime when (1) before or at the time the crime was committed knew the principal offense was being committed or was going to be committed; and (2) knowingly acted in some way for the purpose of causing, encouraging, or aiding the commission of the principal offense. Eighth Circuit Model Jury Instructions 5.01 (2009).

## III.  Count II Properly Tracks the Statutory Language

After both titling and summarizing his motion as a motion to dismiss based on a constitutional "as applied" challenge for vagueness, the defendant then goes on to inject a claim in the body of his motion that Count II is facially flawed because it only tracks the statutory language and "does not allege any facts." (Def. Mot., p. 2).

The defendant claims that because Count II does not allege any specific facts it fails to provide him adequate notice. While the defendant's claim is not supported by any federal rule of

6

procedure or related case law as outlined below, it is also inaccurate.  Further, the defendant's argument misstates the elements of § 1591.

The first line of Count II states, "[t]he Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs A through D of Count One of this indictment."  Thus, Count II fully incorporates and charges all of the facts alleged in great detail in Count I of the indictment, the 18 U.S.C. § 371 conspiracy count.  Thus, contrary to the defendant's claim to this court, facts are alleged in Count II of the indictment.

The defendant misstates the elements of § 1591.  The defendant claims that the government must charge facts in the indictment that show Defendant Cook was involved in "recruiting, enticing, harboring, transporting, providing for, or obtaining the female victim for an illegal enterprise."  (Def. Mot., p. 2).  Nowhere in the statute is there anything required or mentioned regarding an illegal enterprise.  The defendant further claims that the indictment must allege that Defendant Cook received a financial benefit or items of value from his participation in the illegal enterprise.  (Def. Mot., p. 2).  Again, nowhere in the statute, jury instructions, or any related case law is there an element dealing with an illegal enterprise.  This "enterprise" element discussed in the defendant's motion is created by the defendant and the defendant alone.

However, even if the facts were not alleged in Count II of the indictment, and even setting aside the defendant's confusion over the government's burden to prove the defendant was involved in an illegal enterprise, the charge would still provide adequate notice.

Federal Rule of Criminal Procedure Rule 7(c)(1) requires a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The Supreme Court defined what Rule 7(c)(1) required in *Russell v. United States*,

Case 4:10-cr-00244-BCW   Document 156   Filed 04/12/11   Page 7 of 27

369 U.S. 749 (1962). An indictment is considered sufficient if it contains enough information that the defendant can understand the charges, prepare a defense, and claim double jeopardy where appropriate. *Id.* at 762; *see United States v. Peterson*, 867 F.2d 1110 (8th Cir. 1989); *United States v. United Imports Corp*., 165 F. Supp. 969 (D.C.N.C. 2000); and *United States v. Critzer*, 951 F.2d 306 (11th Cir. 1992). An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. *United States v. Young*, 618 F.2d 1281 (8th Cir. 1980), *cert denied,* 449 U.S. 844. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted. *Id.*

Indictments may track the statutory language, or adopt other language, as long as the indictment sets forth the essential elements of the charged offense. *Hamling v. United States*, 418 U.S. 87 (1974); *Russell* 369 U.S. at 765. Charging the language that "tracks" the statutory language of an offense, as long as the statute includes all of the essential elements, is legally sufficient. *United States v. Johnson*, 377 F. Supp. 2d 686, 688 (N.D. Iowa 2005); *United States v. Devoll*, 39 F.3d 575 (5th Cir. 1994); *United States v. Zavala*, 839 F.2d 523 (9th Cir. 1988). In *United States v. White*, the court held "we will find an indictment insufficient only if an essential element 'of substance' is omitted. 241 F.3d 1015, 1021 (8th Cir. 2001); *see United States v. Luros*, 243 F. Supp. 160 (N.D. Iowa 1965).

The indictment does not have to describe the Government's evidence, plead evidentiary detail, or identify all the facts supporting the allegations. *Wong Tai v. United States*, 273 U.S. 77

8

(1927); *United States v. Staggs*, 881 F.2d 1527 (10th Cir. 1989); *United States v. Gordon*, 780 F.2d 1165 (5th Cir. 1986); *United States v. Ellender*, 947 F.2d 748 (5th Cir. 1991); *Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963). To demand more in the language of Count II would require the Government to describe the Government's file in evidentiary detail and outline all of the facts supporting the allegations in the charge itself. Such detail is not required for an indictment to sufficiently allege an offense.

Thus, because Count II incorporates the facts laid out in Count I of the indictment, § 1591 does not require a showing of an "illegal enterprise," and Fed. R. Crim. P. 7(c)(1) only requires the government to track the statutory language, the defendant's motion based on the government's charged language in Count II should be denied.

## IV. Count II Provides Adequate Notice to the Defendant and is Not Unconstitutionally Vague

While the defendant's motion is premature and should be denied on those grounds alone, the defendant's motion also fails on its substantive claim. The government's use of § 1591 is supported by both the terms in the statute, legislative history, and prior application to cases.

The defendant bases his argument solely on analogizing the government's use of § 1591 to charge customers in minor commercial sex trafficking cases in the Western District of Missouri, otherwise known as Operation Guardian Angel. Operation Guardian Angel was a new sting operation developed to target those who purchased children from pimps for acts of prostitution. The defendants were subsequently charged under § 1591, among other offenses. However, because the government's use of the statute in these cases was proper, both as a straightforward application of the statutory language and consistent with the legislative history

and application of the statute, the defendant's argument is not persuasive on these grounds.

Further, the defendant is in a strikingly different position than any of the defendants charged and

convicted in Operation Guardian Angel stings in which he attempts to compare himself. Unlike

the defendants in those cases, Defendant Cook also violated §1591 by benefitting from a venture

with Defendant Edward Bagley and aiding and abetting Defendant Bagley in the offense. The

primary question is not whether the defendant was a customer, seller, or held some other title, but

rather if he knowingly "recruited, enticed, harbored, transported, provided, or obtained the

victim," or " benefitted, financially or by receiving anything of value, from participation in a

venture" which engaged in one of these acts, and he knew that force, fraud, or coercion would be

used to cause the person to engage in a commercial sex act; or that he aided and abetter someone

to do so. The bottom line is whether the defendant violated § 1591 or not. In this case, the

evidence demonstrates without question that he was in violation of the statute.

> ### A. The Defendant "Enticed" and "Obtained" the Victim in violation of § 1591(a)(1)[5]

The defendant further bases his argument that the government misapplied 18 U.S.C.

§ 1591 to his conduct because the TVPA was not intended to address the demand of commercial

sex trafficking, but solely the supply. The defendant argues that there is "no indication from the

language of the statue, from legislative history behind the statute, or from prior enforcement

patterns that § 1591 was intended to apply to the customers of trafficking victims, arguing that it

was only intended to apply to the sellers." (Def. Mot., p. 3). However, the language of the

statute, legislative history, and enforcement patterns prove otherwise.

---

[5] While the government's argument here focuses on the substantive violation of § 1591, the defendant is also charged with conspiring to violate § 1591 in Count I in violation of 18 U.S.C. § 371, attempting to violate §1591 pursuant to the TVPA's attempt statute, 18 U.S.C. § 1594 in Count II, and aiding and abetting Defendant Bagley in violation § 1591 pursuant to § 2.

### 1. The "Entice" and "Obtain" language of § 1591 Applies to the Defendant

The term "obtain**"** as used in 18 U.S.C. § 1591 is not defined in the statute. The term is not defined throughout the U.S. Criminal Code either. The Dictionary of Modern Legal Usage (2nd ed. 1987) defines "obtain" as "a formal word for *get.*" Dictionary.com defines "obtain" as "to get, acquire, or procure, as through an effort or by a request.

Further, the defendant enticed the victim into the activity. It is not necessary for the charge for the defendant to communicate directly with the victim for the defendant to entice the victim to engage in the act of prostitution or illegal sexual activity. The Eighth Circuit Court has already held that 18 U.S.C. § 2422(b), which also uses the term "entice," does not require direct communications with the victim and can be violated through use of a third party. *United States v. Spurlock*, 495 F.3d 1011,1013 (8th Cir. 2007). The third party's "influence and control" over the victim were necessary to the consummation of the crime. *Id.* at 1014. See *United States v. Jonsson,* 15 F.3d 759,761 (8th Cir. 1994). ". . . "'the efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective." *Spurlock*, 495 F.3d at 1014, citing *United States v. Murrell*, 368 F.3d 1283, 1287 (11th Cir. 2004).

In this case, the evidence will show that Defendant Cook both obtained the victim and used Defendant Bagley as a third party to entice or induce her into the conduct. Defendant Cook, after communicating extensively with Defendant Edward Bagley online and viewing live streaming video of Defendant Bagley torturing the victim over the internet, traveled from his home in St. Louis, Missouri to Defendant Bagley's trailer residence in Lebanon, Missouri to

11

engage in sex acts with the victim.  During these sessions, Defendant Bagley *provided* the victim

to Defendant Cook.  Defendant Cook *obtained* the victim for sexual torture sessions.  Defendant

Cook *got* the victim in order to whip, flog, shock, tie up, electrocute, and also have anal, vaginal,

and oral sex with her.   During these sessions, the victim was usually tied up, tied down, chained,

or bound, or was otherwise not able refuse the conduct per the direction of Defendant Bagley.

Certainly, during these sessions Defendant Cook "obtained" the victim.   For the acts of physical

and sexual assaults, and in exchange for cash, hard drives, bondage pornography, and other items

of value, the defendant "got or acquired the victim through an effort or by a request."  Defendant

Cook communicated with Defendant Bagley online and over the phone to make such requests for

sessions with the victim and then traveled to Defendant Bagley's residence approximately 20

times for these sexual torture and sessions.

2.     **Legislative History of the TVPA Supports the Government's Application of § 1591**

Title 18,  United States Code, § 1591, and the Government's application of it to

Defendant Cook, is a valid exercise of Congress' power under the Thirteenth Amendment to

"abolish slavery of whatever name and form and all its badges and incidents."  *Baily v. Alabama*,

219 U.S. 219, 241 (1911) (emphasis added).  Section Two of the Thirteenth Amendment grants

Congress authority to pass laws that are even broader than the prohibition imposed by the

Amendment itself, including authority to pass all laws that are "necessary and proper" for the

obliteration and prevention of slavery.  U.S. CONST. amnd. XIII, § 2, *Civil Rights Cases*, 109

U.S. 2, 20-21 (1883).  Certainly this authority applies to those who purchase individuals and not

just those who sell them.   Purchasing a person falls into another "name or form" that the

12

Thirteenth Amendment intended to prohibit. The purpose of and findings of the TVPA explicitly acknowledge that trafficking in persons is a "modern form of slavery," and further state that "the right to be free from slavery and involuntary servitude is among those unalienable rights. Acknowledging this fact, the United States outlawed slavery and involuntary servitude in 1865, recognizing them as evil institutions that must be abolished. Current practices of sexual slavery and trafficking of women and children are similarly abhorrent to the principles upon which the United States was founded." TVPA of 2000, Pub. L. No. 106-386, 114 Stat. 1462 at § 102. Congress plainly intended to use the Thirteenth Amendment as a source of authority when it passed the TVPA and thus, intended the TVPA to outlaw trafficking "in *whatever name* and *form* and *all its badges and incidents*."

The Trafficking Victim's Protection Act was first passed in 2000. Pub. L. 106-386. A look to the legislative history in 2000, when the TVPA was first enacted, shows that the Congressional intent was to incorporate all players who facilitated the trafficking—including the sellers and purchasers. "[T]he [TVPA] contains.... reforms to the United States criminal law to provide severe punishment, up to life imprisonment in the worse cases, for criminals who *buy and sell* human beings..... [t]his includes people who recruit, transport, purchase, and sell these innocent victims..." 146 CONG. REC. H 2675 (daily ed. May 9, 2000) (statement of Rep. Smith). "The [TVPA] is a comprehensive bill that aims to prevent trafficking in persons... and strengthen prosecution and punishment of those responsible for trafficking." 146 CONG. REC. S7781 (daily ed. July 27, 2000)(statement of Sen. Wellstone) (noting the TVPA criminalizes "all forms of trafficking"). "Those criminals who are involved in trafficking, from the lowest to the highest levels, should not expect to go unpunished in the United States..." 146 CONG. REC. S2617 (daily

13

ed. April 12, 2000) (statement of Sen. Brownback). "This bill presents a comprehensive scheme to 'penalize the full range of offenses' involved in elaborate trafficking networks." 146 Cong. Rec. S 2729 (daily ed. April 13, 2000) (statement of Sen. Brownback). "The bill contains provisions to strengthen current law to *prevent* unlawful *buying and selling* of persons, human beings." (emphasis added). 146 Cong. Rec. H9029 (daily ed. October 6, 2000) (statement of Rep. Lee). "This legislation aims to prevent trafficking in persons.... and strengthen prosecution and punishment for those who are responsible for the trafficking. It is designed to help federal law enforcement officials expand antitrafficking efforts here and abroad, to expand domestic antitrafficking...efforts." 146 Cong. Rec. S10164 (daily ed. October 11, 2000) (statement of Sen. Wellstone). President Clinton agreed with the legislative comments in presidential radio address noting that the TVPA is "setting out harsh penalties for those who trade in human beings." *Presidential Radio Address* (http:..www.presidency.ucsb.edu, Oct. 28, 2000). The TVPA was enacted to address both sides of the trafficking issue, including those who trade in human beings.

When the TVPA was reauthorized in 2003, the legislative history for the Trafficking Victims Protection Reauthorization Act, indicates Congress' efforts to focus on the purchasers, as well as the sellers, was even stronger. Pub. L. 108-193, H.R. 2620 108th Cong. (2003) . "The [TVPA] also seeks to discourage U.S. citizens and others in the United States from creating a *demand* for trafficking..." H.R. Rep. No. 108-264, at 17 (2003) (Conf. Rep.). The legislature also encouraged new techniques to help reduce the demand. "We also promote innovative trafficking prevention initiatives..." 149 Cong. Rec. S10281 (daily ed. November 11, 2003) (statement of Sen. Smith); *see also Id.* (Sen. Lantos) ("we clearly need to do more"). Ambassador John Miller, Director of the Office to Monitor and Combat Trafficking in Persons,

14

stated, "We need to put more emphasis on demand." 108 CONG. REC. H.R. REP. NO. 108-53, at 5 (2003) (Conf. Rep.).

When the TVPA was reauthorized again in 2005, Congress broadened the application and emphasized the issue of demand even more. Pub. L. 109-164; H.R. 2012, 109th Cong. (2005); S. 937, 109th Cong. (2005). "H.R. 2012 is intended to encourage the prosecution of purchasers of commercial sex acts and individuals who exploit others in the commercial sex trade." H.R. No. 109-317, pt. 2 at 17 (2005). The defendant correctly notes that one of the ways the TVPA combats sex trafficking is by funding local and state governments to combat commercial sex trafficking. But nowhere in the legislative history is there an indication that this should be the *only* way. Rather, the legislative history demonstrates that aggressive methods should be sought everywhere. "New strategies and attention are needed to prevent the victimization of United States persons through domestic trafficking." *Id.* at 25. "[The President] has made it clear that ending demand for trafficking is a critical component of this effort. The President has stated, "we cannot put [human traffickers] out of business until and unless we deal with the problem of demand." *Id.* Legislators went on to strongly emphasize that the TVPA was also intended to address the demand in domestic trafficking.

> A Nation that stands for the freedom and dignity of every human being cannot tolerate the degradation and exploitation of the innocent occurring on its own soil.... To eradicate sex trafficking in our Nation, we must focus on eradicating the *demand* for sex trafficking, and I am pleased that this..... has been incorporated into the legislation before us today.... We are going to address demand in our own country.

152 CONG. REC. H11570 (daily ed. Dec. 14, 2005) (statement of Rep. Pryce). "The [TVPA] is important because it expresses Congress' commitment to reduce U.S. domestic demand for sex trafficking." 151 CONG. REC. S14417 (daily ed. Dec. 21, 2005) (statement of Rep. Cornyn).

Again demonstrating the TVPA's bipartisan nature, in the discussion for "Background and Need for Legislation," Congress cited to the President and stated, "President Bush has made it clear that ending demand for trafficking is a critical component of this effort. The President has stated, "we cannot put [human traffickers] out of business until and unless we deal with the problem of demand." H.R. REP. No. 109-317, pt. 2 (2005).

In support of the defendant's argument that the government is misapplying § 1591 by charging Defendant Cook as just a "customer," the defendant cites to the 2010 congressional testimony of Rep. Linda Smith. (Def. Mot., p.5). Rep. Smith was a representative for Congress from 1995 to 1999 and was not in office at the time of the TVPA's enactment or during its reauthorizations. She is now the founder and president of a non-profit organization, Shared Hope International. The defendant cites to her testimony from the *Domestic Minor Sex Trafficking: the Prostitution of America's Children: Hearing Before H. Comm. On Crime, Terrorism, and Homeland Security,* stating that "the government has been able to bring charges under § 1591 by stretching the meaning of "obtain" and "entice" under the first prong of the statute to mean 'purchase' or 'patronize.'" (Def. Mot., p. 5). Rep. Smith never made such a statement and the defendant's characterization of Rep. Smith's testimony is entirely incorrect.

In Rep. Smith's testimony before Congress, she explicitly discussed the U.S. Attorney's Office for the Western District of Missouri and the district's Operation Guardian Angel cases. *Domestic Minor Sex Trafficking: the Prostitution of America's Children: Hearing Before H. Comm. On Crime, Terrorism, and Homeland Security*, 111th CONG. 122 (2010) (statement of Rep. Smith). In fact, Rep. Smith's testimony was not to inform Congress that the Western District of Missouri was *stretching* the terms but to offer her support of the Western District's

16

use of the TVPA to address the demand and support the "innovative investigative techniques."
*Id.*  Rep. Smith's organization began with grant funding from the U.S. Department of Justice to research and study the problem of domestic sex trafficking in the United States.  Her testimony before Congress was to support the Western District of Missouri's application of the statute. *Id.*  While Rep. Smith spoke long after the enactment of both the TVPA and its reauthorizations, including the latest amendments added in 2008, she was consistent with the actual legislative history of the TVPA.

The defendant also goes on to argue that if Congress intended to have the TVPA apply to those who obtain victims for commercial sex trafficking, it would include similar language to Missouri state statutes for patronizing prostitution.  (Def. Mot., p. 4).  First, the government does not contend that § 1591 should be used to charge customers of consensual adult street prostitutes.  Such an application is quite clearly an issue for the state and outside the bounds of §1591.  See section (iii) below.  Section 1591 should never mirror a state statute for patronizing prostitution.

However, regardless,  instead of comparing § 1591 to state statutes, the more appropriate comparison is to other federal statutes.  The forced labor statute of the TVPA applies to those who knowingly "provide or obtain" the labor or services of a person through prohibited means. 18 U.S.C. § 1589.  If the defendant's argument is correct that means that the Forced Labor statute of the TVPA could only apply to those who sell individuals into forced labor and would never apply to those who purchase them, or "obtain" them.  Such a prohibition on the application of 18 U.S.C. § 1589 would not only be illogical, but contrary to its application across the country.  Looking outside of the TVPA, other statutes also apply to those who acquire individuals for sexual acts.  Both 18 U.S.C. § 2422(a) and (b) provide for two separate violations for individuals

17

who "knowingly persuade, induce, entice or coerce" individuals into prostitution, or other specified sexual criminal activity. Both charges are used widely to charge those who are obtaining the victims for the sexual activity themselves.

Needless to say, a review of the legislative history from the TVPA's initial enactment in 2000, through its reauthorization in 2003 and 2005, clearly show that Congress, the President and those who spoke in support of this bi-partisan bill's passage, all intended the TVPA to be used to prosecute both the sellers and the purchasers, both the supply and the demand.[6]

### 3. Enforcement Patterns Also Demonstrate that § 1591 was Intended to Apply to Customers who Violate § 1591

The defendant claims that enforcement patterns do not demonstrate that § 1591 was intended to apply to customers. However, again, this is not the case.

In 2006, the Eleventh Circuit affirmed the Southern District of Florida's case where they utilized 18 U.S.C. § 1591 to charge a customer of commercial sex trafficking. *United States v. Strevell*, 185 Fed. Appx. 841, 843 (11th Cir. 2006), *cert. denied,* 549 U.S. 1065. In *Strevell,* the defendant responded to an ad in an adult magazine and paid who he thought was a pimp, but was actually an undercover law enforcement office, for a 24 hour sex session in a hotel room with a 14-15 year old prostitute. *Id.* The court noted that the government relied upon the language "obtain and entice" in charging the customer. *Id.* at 845.

---

[6] The defendant also represents to the court that the TVPA was only passed to "combat those who traffic women and children for commercial sexual exploitation." (Def. Mot., p. 3). This too, is a very narrow reading of the TVPA and its legislative history, as the TVPA was not just passed for children and women. The TVPA was passed to address trafficking of adults, not just children; men, not just women; and forced labor trafficking, not just commercial sex trafficking.

18

As the defendant notes, the use of 18 U.S.C. § 1591 to charge customers is also now commonplace in the Western District of Missouri. Seven different defendants have been charged as "customers" of child sex trafficking under §1591 in the Western District of Missouri and are now convicted and serving sentences. *United States v. Albers,* 4:09-cr-00078-FJG; *United States v. Childers,* 4:09-cr-0079-HFS; *United States v. Cockrell,* 4:09-CR-00080-DW; *United States v. Oflyng,* 4:09-cr-00084-SOW; *United States v. Doerr,* 4:09-cr-0031-FJG; *United States v. Johnson,* 4:09-cr-00034-DW; *United States v. Mikoloyck,* 4:09-cr-00036-GAF. The defendant's claim that the statute did not apply to customers has already been litigated in the Western District of Missouri.

In *United States v. Mikoloyck*, the Western District of Missouri district court affirmed the governments use of § 1591 to prosecute the customers and not just the sellers and denied the defendants' motions to dismiss on this claim.[7] 2009 WL 4798900 (W.D.Mo. 2009)(U.S. District Judge Gary Fenner, adopting the report and recommendation from U.S. Magistrate Judge John Maughmer). The Court stated, "contrary to the defendant's argument, 18 U.S.C. § 1591 clearly applies to those who attempt to purchase underage sex, not merely the pimps of actual exploited children." *Id.* at p. 7. In *United States v. Doerr,* the court again affirmed the government's use of the statute to prosecute to customers of sex trafficking and stated, "[I]ngenuity and originality are not defenses to criminal activities." Case No. 4:09-cr-00031-FJG (Chief U.S. District Judge Fernando Gaitan, adopting the report and recommendation from U.S. Magistrate Judge John Maughmer).

---

[7] Instead of bringing the claim improperly on a motion to dismiss the indictment based on a premature "as applied" constitutional challenge to § 1591, the defendants brought the challenges on other grounds, *ie*: vindictive prosecution.

19

Further, the Western District of Missouri's neighboring district has also used 18 U.S.C. § 1591 to charge customers of commercial sex trafficking. The Eastern District of Missouri has charged and convicted four different defendants who were customers under §1591. *United States. v. Louis Cooke*, No. 4:10-cr-00328; *United States v Grady,* No. 4:09-cr-00485; *United States v. Hawkey*, No. 4:09-cr-00487, *United States v. Nichol, No.* 4:09-cr-00464.

Finally, the defendant's own selected citation to Rep. Smith's testimony also includes evidence of the widespread application of 18 U.S.C. § 1591 to customers. "...[F]ive other U.S. Attorney's Offices from Virginia to Alabama have initiated similarly modeled operations [charging customers under § 1591]. *Domestic Minor Sex Trafficking: the Prostitution of America's Children: Hearing Before H. Comm. On Crime, Terrorism, and Homeland Security*, 111th Cong. 122 (2010) (statement of Rep. Smith).

Section 1591 does not allow the government to charge a customer of consensual adult street prostitution. Further, even if the victim was coerced into the activity, § 1591still does not apply to customers unless there is greater evidence of the defendant's involvement and knowledge of the victim's coercion. Because the charges against Defendant Cook involve the § 1591 provision for adult victims, as opposed to minor victims, the government also has the additional burden of proving that the defendant knew *force, fraud or coercion* was being used to cause the victim to engage in commercial sex acts. In contrast, for minor victims, the government only has to show that the defendant knew the victim was under 18 years of age; the government does not have the additional burden to prove that the defendant had any knowledge of force, fraud, or coercion or that it was even used at all, as a minor's consent to commercial sex is not a defense. Section 1591's requirement that the government prove that the defendant had

20

knowledge that *force, fraud, or coercion* was being used to cause the victim to engage in the sexual acts will prevent § 1591 from applying to "just a customer," as argued by the Defendant. The defendant argues that the intent of § 1591 was not to apply to *just* someone who purchases or patronizes who they believe is a consenting adult prostitute, but is actually a victim of trafficking. If a defendant was just a "john" who drove up to a street corner, paid a female for sex, received the sex and went on his way, without any other evidence, § 1591 would never apply to this customer, regardless of whether the female was a consenting prostitute or actually a victim of trafficking.

In fact to make this clear, § 1591 actually carries *two* different knowledge requirements. The government must prove both:

> that the defendant *knowingly* recruited, enticed, harbored, transported, provided, or obtained the victim, or participated in a venture who committed one of these acts, or benefitted financially or by receiving anything of value, from participation in a venture which engaged in one of these acts;

> *and*

> that the defendant *knew* that force, fraud, or coercion would be used to cause the person to engage in a commercial sex act.

Without the provision that the defendant knew that force, fraud, or coercion would be used to cause a person to engage in a commercial sex act, there would be risk that § 1591 could apply to "just" the customers who drove up and received commercial sex without more. But with this additional knowledge element, the statute requires that to violate § 1591 the defendants must be involved in a much more intimate way, as they actually must have notice that the victim was being coerced into the sexual activity. At trial, the government must prove that Defendant Cook had knowledge the victim was being forced, defrauded, or coerced into the sexual activity, just as

21

in the Operation Guardian Angel cases the government had to prove that the defendant knew the victim was a minor. Indeed, Defendant Cook was much more than just a customer who purchased the victim on a street corner. Defendant Cook watched Defendant Bagley torture the victim over the internet; he downloaded and saved those images to his computer, and he sent suggestions to Defendant Bagley as to how he could increase the pain and torture on the victim. With this knowledge, the defendant traveled to Defendant Bagley's house and watched Defendant Bagley torture the victim in person. Defendant Cook then gave Defendant Bagley cash, hard drives, and bondage videos with new and advanced torture techniques, including videos to further teach Defendant Bagley how to bury the victim alive. In exchange, Defendant Cook got to torture the victim himself along with engaging in multiple forms of sexual intercourse. The defendant also assisted Defendant Bagley by exploring how he could build his own webpage to make more money off of the victim, in order to exploit her on an even greater level. Whether the defendant violated § 1591 is a factual question for the jury.

### B. The Defendant "Participated in a Venture" in violation of § 1591(a)(2)

The defendant's motion also fails to address the fact that in addition to the first prong of the statute, the defendant also violated the second prong of the statute. The defendant does not have to "recruit, entice, harbor, transport, provide, or obtain" the victim pursuant to § 1591(a)(1), if the defendant *benefitted*, financially or by receiving anything of value, from participation in a venture which has engaged in one of these acts in violation of § 1591(a)(2). 18 U.S.C. § 1591(e)(5) defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." The defendant's venture was with co-defendant Bagley.

The definition of "anything of value" in the U.S. Criminal Code is construed broadly. *United States v. Williams*, 705 F.2d 603, 623 (2d Cir. 1983) (construing "anything of value" language broadly in context of a bribery statute). "The thing of value may be money or any other tangible or intangible thing of value that may be given to or received by any person, regardless of whether the person who receives it is the person performing the commercial sex act." *United States v. Royal*, Case No. AW-09-048, Jury Instructions, p. 57 (D. Md). The U.S. Sentencing Guidelines have also provided a definition for "thing of value." In U.S.S.G. § 2G2.2, when discussing trafficking in child pornography, Application Note (1) defines the term as "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. 'Thing of value' means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received."

A plain reading of § 1591(a)(2) clearly includes financial benefits or "anything of value." "Anything of value" is a subjective term to apply to something of value to the person receiving it. The evidence at trial will demonstrate that the defendant received things of value from his venture with Defendant Bagley.

In addition to the sexual acts themselves, Defendant Bagley also allowed Defendant Cook to whip and beat the victim for his own sexual and sadistic gratification, including torturing the victim with appendages and devices. The victim will testify that Defendant Cook especially enjoyed using the crank phone, a device that shoots electrical currents into the victim's body through her vaginal opening, breasts and toes.

23

Defendant Cook also benefitted through the receipt of bondage and torture images and video from Defendant Bagley. The evidence at trial will demonstrate that Defendant Cook viewed and collected these images of the victim for sexual arousal and sadistic amusement. For someone who receives sexual gratification from torture, just like a pedophile who receives sexual gratification from viewing child pornography, there is no greater thing of value than new fresh images of the deviant sexual abuse. *United States v. Griffin*, 482 F.3d 1008, 1012 (8th Cir. 2007); *United States v. Sewell*, 457 F.3d 841, 842 (8th Cir. 2006); *see* U.S.S.G. § 2G2.2 Application Note, Definitions (1)("the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received" ).

Further, Defendant Cook also used the ideas he got from Defendant Bagley's torture of the victim that he viewed both online and in person, as new ideas for how to torture the female living in his own residence, JP.[8] The evidence will show that Cook downloaded these images of the female victim from Defendant Bagley and made JP watch them for hours. Cook would further come up with new ideas of how to torture JP and "surprise her" when she arrived at his residence, forcing her into new bondage activities that she did not want to engage in. JP stated she never wanted to engage in any of these activities but had to because Defendant Cook "got off on them sexually."

Thus, from his venture with Defendant Bagley, the defendant benefitted by receiving numerous things of value, including personal torture sessions with the victim, new images and video of bondage and torture for his pornography collection, and new methods of how to torture

---

[8] JP is the victim of the witness tampering charge in Count 18 of the indictment.

the female living in his own residence, all of which he did for his own personal sexual and sadistic gratification.  Thus, the defendant is in violation of not just § 1591(a)(1), but also (a)(2) because he benefitted from his venture with Defendant Bagley.

**C.    The Defendant Aided & Abetted in violation of §§ 1594 and 2**

The defendant was not just charged with directly violating § 1591 in Count II of the indictment, but also as an aider and abetter, and as someone who attempted to commit the crime, in violation of Sections 2 and 1594.  Thus, while there is sufficient evidence to prove a completed violation of 1591, the government's burden at trial is actually must less.  Because both § 2, aiding and abetting, and § 1594, attempt, are also charged, the government must only prove that the defendant aided and abetted Defendant Bagley or intended to commit a violation 1591 and took a substantial step towards the completion of that crime.

25

WHEREFORE, because the defendant's motion is prematurely filed prior to trial, and otherwise lacks merit because Count II is properly charged, and defendant's actions clearly violate the elements of 18 U.S.C. § 1591, the defendant's motion should be denied.

Respectfully submitted,

Beth Phillips
United States Attorney

By      */s/ Paul S. Becker*

Paul S. Becker
Assistant United States Attorney
Chief, Violent Crimes Strike Force Unit

*/s/ Cynthia L. Cordes*

Cynthia L. Cordes
Assistant United States Attorney
Human Trafficking Coordinator

*/s/ John Cowles*

John Cowles
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122

CLC/lm

26

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on

April 12, 2011 to the CM-ECF system of the United States District Court for the Western District

of Missouri for electronic delivery to all counsel of record.

> Carter Collins Law
> Law & Schriener LLC
> 141 N Meramec Ave., Ste 314
> St. Louis, MO  63105-3750
>
> Lance David Sandage
> The Sandage Law Firm, PC
> 117 West 20th Street, Suite 201
> Kansas City, MO 64108

*/s/ Cynthia L. Cordes*
_____
Cynthia L. Cordes
Assistant United States Attorney

27