IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-00244-02-CR-W-DW |
| | ) | |
| BRADLEY COOK, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

COMES NOW the United States of America, by Beth Phillips, United States Attorney, and Assistant United States Attorney, Cynthia L. Cordes, both for the Western District of Missouri, and offers the following response in opposition to the defendant's motion to dismiss Indictment.[1] Because the defendant's motion is based on sufficiency of the evidence, it should be denied as procedurally premature and a pretrial hearing should not be granted. However, even on the substance of the claim, the defendant is properly charged as a co-conspirator because he violated the elements of Sections 1591, 1594, 1952, and 2 the defendant's motion should also be denied.

**I.      Defendant's Motion Based on Sufficiency of the Evidence is Premature**

The defendant moves this court to dismiss the indictment based on sufficiency of the evidence. The "government is incapable of proving the elements of the charged offenses beyond a reasonable doubt." (Def. Mot., p. 1).

---

[1] Additional charges were added in the superseding indictment returned on March 30, 2010, filed subsequent to the defendant's motion. Thus, the motion is now only relevant to Counts One, Two and Thirteen and not the full indictment.

A challenge to the indictment based on sufficiency of the evidence pursuant to Fed. R. Crim. P. Rule 29(a) needs to be filed at the close of the government's case in chief or at the close of the evidence presented at trial.

> Rule 29. Motion for a Judgment of Acquittal
>
> (a) Before Submission to the Jury. After the government closes its evidence of after the close of all the evidence, the court on the defendant's motion must enter a judgement of acquittal for any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgement of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

A motion to dismiss an indictment is proper only if it raises an issue of law. Fed. R. Cr. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine *without* a trial of the general issue." (emphasis added). "In a criminal case, the 'general issue' is defined as evidence relevant to the question of guilt or innocence.'" *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010), *quoting United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005).

Sufficiency of the evidence issues cannot be taken up prior to trial. *United States v. Ferro*, 252 F.3d 964, 967-968 (8th Cir. 2001)*, citing United States v. Gaudin*, 515 U.S. 506, 523 (1995). "The courts have recognized, however, that an indictment is not subject to a motion to dismiss based on allegations of the insufficiency of the government's evidence." *United States v. Jones*, 556 F. Supp. 2d 985, 991 (E.D. Mo), *citing Ferro*, 252 F.3d at 968. "The case law clearly provides that an indictment that is valid on its face is immune from attack by a claim that there was insufficient competent evidence presented to a grand jury." *Id., citing Costello v. United States*, 350 U.S. 359, 363 (1956). "Now, so long as the indictment contains a facially sufficient

allegation...federal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence.'" *Id.* at 968, *citing United States v. Critzer,* 951 F.2d 306, 307-08 (11th Cir. 1992); *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (comparing criminal cases to civil cases noting where there is summary judgment procedures contemplated by Fed. R. Civ. P. 56, there is "no corollary in criminal cases"). "The district court erred procedurally in taking up [the sufficiency issue] prior to trial." *Ferro*, 252 F.3d at 967.

A pretrial motion to dismiss [an] indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced by the general issue. Rule 12 is not intended to authorize speaking motions through which the truth of the allegation is an indictment are challenged. *United States v. Ayaraza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987); *United States v. Delaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000) (stating pretrial motion to dismiss is not a permissible vehicle for addressing the sufficiency of the Government's evidence); *United States v. Adkinson*, 135 F.3d 1363 (11th Cir. 1998) (court cannot consider sufficiency of the evidence before trial). Instead a pretrial motion must be based on some defect appearing on the face of the challenged indictment. *United States v. Mann*, 517 F.2d 259, 266-67 (5th Cir. 1975) (stating that an indictment is to be tested not by the truth of its allegations, but by its sufficiency to charge an offense, because the allegations in the indictment must be taken as true).

Thus, if "contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, [Fed. R. Crim. P.] Rule 12 doesn't authorize its disposition before trial." *Id.* Where a defendant's arguments challenge the government's ability to prove an element of the offense, the motion "amounts to a premature challenge to the
3

sufficiency of the government's evidence tending to prove a material element of the offense." *United States v. Nukida*, 8 F.3d 665, 669-670 (9th Cir. 1993). Such an argument should be presented by, for example, a Rule 29 motion for acquittal "and not by a pretrial motion to dismiss." *Id.* at 670. "A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence" and a "motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). The Federal Rules of Criminal Procedure simply do not "provide for a pre-trial determination of the evidence." *Id.* Accordingly, a "district court may not resolve evidentiary issues on a motion to dismiss." *United States v. Self*, 2 F. 3d 1071, 1082 (10th Cir. 1993). Thus, it is improper to file a motion to dismiss an indictment on the ground that the defendant did not violate the statute charged because an indictment "may not be challenged by a pretrial motion on the ground that it is not supported by adequate evidence." *United States v. King*, 581 F. 2d 800, 802 (10th Cir. 1978). For these reasons, the defendant's motion is premature and should be denied.

Despite the fact that the defendant's motion is improper, the defendant goes on to request that this court have an evidentiary hearing in support of his improperly postured motion. The defendant is not entitled to hearing on this matter and to allow a hearing would be a waste of the court's time and would serve to unfairly depose government witnesses without any legal basis to do so. The government requests that this court deny the defendant's request for a hearing and deny the defendant's motion based on the sufficiency of the evidence as being improperly alleged.

## II. Count One: The Defendant was properly charged as a Co-conspirator

While the defendant's motion is premature and should be denied on that basis alone, the substance of his claims would not, in any event, justify his requested relief.

The defendant claims that he was not properly charged as a co-conspirator. He makes this claim on two arguments: (1) the only defendant that he knew was Defendant Bagley, and thereby he was not conspiring with the other defendants (Def. Mot. p. 2, 4); and (2) his role was limited as only a buyer of a limited transaction (Def. Mot. p.4, 5). Both of these claims are without merit.

Knowledge of or interaction with a co-conspirator is not required to be charged as a co-conspirator in the same indictment. "One does not have to have contact with all of the other members of the conspiracy to be held accountable as a conspirator." *United States v. McCarthy*, 97 F.3d 1562, 1571 (8th Cir.1996)*, citing Bascope-Zurita*, 68 F.3d 1057, 1569 (8th Cir. 1995). "Notwithstanding a defendant's lack of knowledge of the identity of all of the other co-conspirators or his failure to appreciate the extent of the enterprise, a defendant can be held liable as a co-conspirator if he shares the same common purpose or goal of the other conspirators. *Id*. "To determine whether multiple conspiracies exist when a single large conspiracy has been charged by the government, this Court considers the totality of the circumstances, 'including the nature of the activities involved, the location where the alleged events of the conspiracy took place, the alleged events of the conspiracy took place, the identity of the coconspirators involved, and the time frame in which the acts occurred.'" *Id., citing United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995). "Thus, if the activities of a defendant... facilitated the endeavors of other alleged coconspirator or facilitated the venture as a whole, the necessary interdependence

5

of the alleged conspirators' acts-reflecting the conspirators' coincidence of interest and a knowing coordination of efforts to produce a result in harmony with those interests is present." *Id., citing United States v. McCoy*, 86 F.3d 139, 141 (8th Cir. 1996).

In Defendant Cook's case, both he and co-defendants Dennis Henry, James Noel[2], and Michael Stokes engaged in similar conduct. Each defendant's conduct was lengthy, overlapping, and ongoing, stretching through a four year period. The defendants met Defendant Bagley the same way, through the internet on alt.com.[3] All of the defendants were aware of Defendant Bagley's egregious mental and physical abuse of the victim and that she functioned as a slave. The defendants also traveled to Defendant Bagley's trailer residence for sex with torture to the victim. The defendants all gave Defendant Bagley things of value: cash, steaks, hard drives, bondage pornography, cigarettes, among other goods, in exchange for the sexual torture sessions. The defendants all knew that there were other men engaging in the sexual torture sessions with the victim.

Defendant Cook argues that the conduct must be "beyond [a sales agreement]." (Def. Mot., p.5). Each of the charged defendants all took steps to assist Defendant Bagley's exploitation and trade of the victim. Defendant Cook was certainly more than just a buyer who stopped off at the street corner and purchased drugs from a seller one time. This defendant assisted Defendant Bagley in the victim's sale and exploitation, and furthered the conspiracy with

---

[2] Defendants Dennis Henry and James Noel have already plead guilty.

[3] With the exception that Defendant Noel was introduced to Defendant Bagley through Defendant Stokes who met Defendant Bagley on alt.com.

6

Defendant Bagley, and with other co-conspirators, who he knew were also torturing the victim, even if he did not know their specific identities.

Defendant Cook watched Defendant Bagley torture the victim over the internet; he downloaded and saved those images to his computer and asked for more; he sent suggestions to Defendant Bagley of how he could increase the pain and torture on the victim. With this knowledge, Defendant Cook traveled, on approximately 20 different occasions, from St. Louis, Missouri to Lebanon, Missouri, to Defendant Bagley's house and provided Defendant Bagley with cash, hard drives, and bondage videos. The videos provided by Cook included new and more heinous torture techniques for Defendant Bagley to use to torture the victim. Defendant Cook provided videos of "Uncle Petey" and "insex.com" to teach Defendant Bagley, among other things, how to bury the victim alive. While at Defendant Bagley's residence, Defendant Cook then tortured the victim himself along with engaging in multiple forms of sexual intercourse. During these sessions, Defendant Cook also demonstrated for Defendant Bagley new torture techniques to bring the victim more pain. These included, but were not limited to, covering the victim's naked body with clothes pins and tying up the victim's breasts with rope. The rope would cut off the victim's blood flow and then Defendant Cook would slap the victim's highly sensitized breasts with a paddle, whip or his hand. Defendant Bagley produced and distributed these images, among many others, over the internet. Defendant Cook, who was knowledgeable about the internet, taught Defendant Bagley how to build his own web page to sell the victim on a larger scale, escalating her exploitation. By Defendant Cook's own admission, he knew the website was going to be used to sell the victim to others. To try to argue that the defendant was "just a customer" who did not do more than engage in a simple sales

7

transaction and had no knowledge of anything else is a gross understatement of the defendant's offense conduct in this case. Defendant Cook cannot be compared to the "john" who stops off at a street corner for quick sex with a prostitute or drug buy. Defendant Cook took numerous steps, fully aware of Defendant Bagley's exploitation of the victim, to further and advance the conspiracy. The fact that he did not know the identity of the other co-defendants is irrelevant, as the evidence will be that he knew of their existence.

### III.  Count Two: The Defendant was properly charged in Count Two

The defendant also makes a sufficiency of the evidence argument as it pertains to Count II. Again, setting aside that a sufficiency of the evidence claim is premature at this juncture, the defendant's claim to Count II also fails on the merits. The defendant violated two separate prongs of § 1591: first by engaging in commercial sex acts with the victim knowing that she was being forced and coerced into the acts; and second, by participating in a venture in violation of § 1591(a)(2).

#### A.  Defendant "Enticed" and "Obtained" the Victim in Violation of § 1591(a)(1)

The defendant begins by contending that § 1591 are inapplicable to the "customers of trafficking victims" and cross referencing his prior argument in his "Motion to Dismiss Count Two of the Indictment" [Doc. 117]. (Def. Mot. p. 5). Because this Court ordered in its "Stipulations and Orders" filed on December 10, 2010 [Doc. 90], that "each motion and response shall be a separate pleading," the government does not reiterate its response herein or cross reference the government response already filed.

8

The defendant is also charged as taking substantial steps towards committing the offense in violation of § 1591's attempt provision outlined in § 1594, and aiding and abetting Defendant Bagley in violation of § 2.

B.  **Defendant Engaged in a "Commercial Sex Act"**

The defendant goes on to argue that even if Count Two is properly charged, there are not facts to support that the defendant engaged in a "commercial sex act." A "commercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

The definition of "anything of value" in the U.S. Criminal Code is construed broadly. *United States v. Williams*, 705 F.2d 603, 623 (2d Cir. 1983) (construing "anything of value" language broadly in context of a bribery statute). In § 1591 charges, "[t]he thing of value may be money or any other tangible or intangible thing of value that may be given to or received by any person, regardless of whether the person who receives it is the person performing the commercial sex act." *United States v. Royal*, Case No. AW-09-048, Jury Instructions, p. 57 (D. Md.). The U.S. Sentencing Guidelines have also provided a definition for "thing of value." In U.S.S.G. § 2G2.2, when discussing trafficking in child pornography, Application Note (1) defines the term as "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. 'Thing of value' means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received."

9

Whether you look to a plain reading of § 1591 itself, the definition provided in § 1591(e)(3), other definitions in the U.S.C. or relevant definitions in the U.S.S.G, the term "thing of value" can quite clearly mean other items besides cash. It is a subjective term to apply to something of value to the person receiving it. The evidence at trial will show that the defendant paid the defendant both cash (or as the defendant referred to it "good money") and with hard drives containing bondage videos of new methods of torture for Defendant Bagley to experiment on the victim for his sexual acts and torture sessions with the victim. Defendant Cook provided these hard drives to Defendant Bagley to assist Bagley for his own sexual abuse of the victim and to aid him in creating "new material" to sell the victim over the internet. For someone who receives sexual gratification from torture, just like pedophile who receives sexual gratification from viewing child pornography, there is no greater good than new images of the deviant sexual abuse. Further, Defendant Cook also provided Defendant Bagley with new tips on how to torture the victim and went to his residence to demonstrate on the victim as well. In exchange for these items of value to Defendant Bagley, Defendant Bagley allowed the Defendant Cook to have vaginal and anal sex with the victim and forced the victim to perform oral sex on him. Defendant Bagley further provided the victim to Defendant Cook for him to sexually torture her with devices.

Defendant Cook also claims that even if items of value were provided to Defendant Bagley, they were not in direct exchange for the sexual acts. (Def. Mot. P. 6) (not a quid pro quo exchange). However, the victim will testify at trial that Defendant Cook never came to the Bagley residence for his sexual torture sessions with her empty handed. Defendant Cook always brought something for Defendant Bagley for his time with her, *ie*: hard drives with new bondage

videos. There will also be testimony at trial that he admitted he paid Defendant Bagley cash for sex with the victim. The defendant's argument that he drove all the way from St. Louis to Lebanon, Missouri, and engaged in anal, vaginal, and oral sex with the victim while also torturing her with devices, but that he provided these gifts to Defendant Bagley for some other unstated purpose is highly unbelievable and lacks any evidentiary support. Further, there is no requirement in § 1591 that requires the commercial aspect of the commercial sex act be fulfilled within the same moment or day as the sex acts themselves. Thus, hypothetically, even if these exchanges were not made when Defendant Cook traveled to the residence, and were provided to Defendant Bagley on different dates, or even if the items were provided to Defendant Bagley sporadically as a part of maintaining his relationship with Defendant Bagley so Defendant Cook could have continued access to the victim for sex and torture, the element would still be fulfilled.

      C.     **Defendant also Participated in a Venture in violation of § 1591(a)(2)**

The defendant's motion also fails to recognize that the defendant's conduct also violated the second prong of the statute. The defendant does not have to "recruit, entice, harbor, transport, provide, or obtain" the victim pursuant to § 1591(a)(1), if the defendant *benefitted*, financially or by receiving anything of value, from participation in a venture which has engaged in one of these acts, in violation of § 1591(a)(2). 18 U.S.C. § 1591(e)(5) defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." The defendant's venture was with co-defendant Bagley.

As already stated in Section B immediately above, the definition of "thing of value" is construed broadly. This same analysis applies to whether the defendant received "anything of value in violation" of the second prong of § 1591(a)(2). "Anything of value" is a subjective term

11

to apply to something of value to the person receiving it. The evidence at trial will demonstrate Defendant Cook also received things of value from his venture with Defendant Bagley.

In addition to the sexual acts themselves, Defendant Bagley also allowed Defendant Cook to whip and beat the victim for his own sexual amusement, including torturing the victim with appendage and devices. The victim will testify that Defendant Cook found special pleasure in using the crank phone, a device that shoots electrical currents into the victim's body through her vaginal opening, breasts and toes. Defendant Cook benefitted by receiving full and explicit access to torture the victim who was bound, caged, or tied up, or otherwise under the control of her "master" Defendant Bagley, in addition to the acts of sexual intercourse themselves.

Defendant Cook also benefitted through the receipt of bondage and torture images and video from Defendant Bagley. The evidence at trial will demonstrate that Defendant Cook viewed and collected these images for sexual arousal. As previously stated in the discussion above, for someone who receives sexual gratification from torture, just like pedophile who enjoys sexual arousal from viewing child pornography, there is no greater thing of value than new images of the deviant sexual abuse. New, raw, unstaged images are a hot commodity. See § III. B. For sexual sadists, there is no greater currency than new images of sexual abuse and torture which depict a person's pain and suffering.

Further, Defendant Cook also used the ideas he got from Defendant Bagley's torture of the victim that he viewed both online and in person, as new ideas for how to torture the female living in his own residence, JP.[4] This new information also constitutes "something of value." JP

---

[4] JP is the victim of the witness tampering charge in Count 18 of the indictment.

will testify that Cook download the images of the female victim and made her watch them for hours.  JP will testify that Cook would come up with new ideas of how to torture her and "surprise her" when she got home.  JP will testify that she never wanted to engage in any of these activities but had to because Defendant Cook "got off on them sexually."  Thus, Defendant Cook also benefitted from his venture with Defendant Bagley by learning new torture ideas to use on the female in his own residence.

Thus, from his venture with Defendant Bagley, the defendant benefitted by receiving numerous things of value, including personal torture sessions with the victim, new images and video of bondage and torture for his pornography collection, and new methods of how to torture the female living in his own residence, all of which he did for his own personal sexual gratification.

**IV.     Count Three: The Defendant was properly charged in Count Four**

The defendant does not challenge Count Four based on the use of an interstate facility in commission of the offenses, but rather repeats the challenge to the underlying offenses.  Count Four relies on the underlying offenses of Count Two and/or a state prostitution statute.  The defendant cross references and repeats his same claims that the evidence is insufficient to show that the defendant engaged in sex acts for a something of value.  For the same reasons the government has already stated, this argument is invalid and the motion to dismiss Count Four should also be denied.

### V. Forfeiture Allegation is Amended to Properly Allege Forfeiture Against the Defendant

The forfeiture allegation in the superseding indictment was amended to only forfeit the defendant's computers as instrumentalities of the offense as charged in Count One and Two of the indictment. Thus, the defendant's motion as it pertains to the forfeiture allegation should also be denied as moot.

WHEREFORE, because the defendant's motion is a premature argument based on sufficiency of the evidence pursuant to Fed. R. Crim. P. Rule 29(a) and because the defendant's argument fails on the merits regardless, the defendant's motion should be denied without a hearing.

Respectfully submitted,

Beth Phillips
United States Attorney

By  */s/ Paul S. Becker*

Paul S. Becker
Assistant United States Attorney
Chief, Violent Crimes Strike Force Unit

*/s/ Cynthia L. Cordes*

Cynthia L. Cordes
Assistant United States Attorney
Human Trafficking Coordinator

*/s/ John Cowles*

John Cowles
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122

CLC/lm

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing was delivered on April 12, 2011 to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

    Carter Collins Law
Law & Schriener LLC
141 N Meramec Ave., Ste 314
St. Louis, MO 63105-3750

    Lance David Sandage
The Sandage Law Firm, PC
117 West 20th Street, Suite 201
Kansas City, MO 64108

    */s/ Cynthia L. Cordes*

    Cynthia L. Cordes
Assistant United States Attorney