## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-00244-02-CR-W-DW |
| | ) | |
| BRADLEY COOK, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO REOPEN THE DETENTION HEARING

Comes now the United States of America, by Beth Phillips, United States Attorney, and the undersigned counsel, all for the Western District of Missouri, and hereby requests that the Court deny "Defendant Bradley Cook's Motion to Reopen the Detention Hearing" because the defendant failed to outline a basis to do so pursuant to 18 U.S.C. § 3142(f)(2)(B). In support of this response in opposition, the Government offers the following suggestions.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

1.     On September 7, 2010, a federal grand jury in the Western District of Missouri returned an 11-count indictment against Defendant Cook and four other defendants. Defendant Cook was named in four of the charged counts. The charges returned against Defendant Cook were as follows:   Count One:   Conspiracy to Commit Sex Trafficking by Force, and Coercion and Use an Interstate Facility to Facilitate Unlawful Activity, in violation of 18 U.S.C. § 371; Count Two:  Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. §§ 1591, 1594, and 2; Count Ten:  Drug User in Possession of a Firearm, in violation of 18 U.S.C.

§ 922(g)(3);[1] and Count Eleven:  Use of an Interstate Facility to Facilitate Unlawful Activity, in violation of 18 U.S.C. §§ 1952(a) and 2.  The lead count against the defendant is Count Two, Commercial Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. §§ 1591, 1594, and 2.  For this count alone, the defendant faces a statutory mandatory minimum of 15 years of imprisonment and up to a term of life imprisonment.  Pursuant to 18 U.S.C. Section 3156(A), Counts One and Two are crime of violence.  Pursuant to 18 U.S.C. Section 3142(e), these counts also carry a rebuttable presumption for pretrial detention.

2.      On September 9, 2010, the defendant was arrested in the Eastern District of Missouri and appeared in court under Fed. R. Crim. P. 5(c)(3).  The defendant was detained in the Eastern District of Missouri pending further proceedings in the Western District of Missouri.

3.      On September 10, 2010, the Government filed a motion for a detention hearing and for pretrial detention pending trial.  (Doc. 14.)

4.      On September 28, 2010, Chief U.S. Magistrate Judge Robert E. Larsen held a detention hearing.   The hearing included the stipulation by the parties to the pretrial service report, the lengthy direct and cross-examination testimony of Special Agent Samuel Benson, and Government's Exhibits 1-21.  The Court found that there was no condition or combination of conditions that would reasonably assure the appearance of the defendant or the safety of any other person or persons and the community and orally ordered the defendant detained pending trial.

---

[1]This count was dismissed in the Western District of Missouri and re-filed in the Eastern District of Missouri.

2

5.     On October 6, 2010, Chief U.S. Magistrate Judge Robert E. Larsen issued a written order of detention. (Doc. 52.)  The order contained findings of fact related to the defendant's background, criminal history, statements from the victim, statements from the defendant's girlfriend, "JP," evidence from the defendant's computer, a statement from the defendant, and the defendant's conduct during the proffer session and at the time of the search warrant and arrest.  The Court also noted the statutory minimums and maximums on the charged counts. (Doc. 52, pp. 3-10.)

6.     On October 19, 2010, the defendant appealed Chief United States Magistrate Judge Robert E. Larsen's detention order to the district court judge, United States District Court Judge Dean Whipple. (Doc. 64.)  On October 27, 2010, the Government filed a response in opposition. (Doc. 75.)  On November 15, 2010, the defendant filed reply suggestions. (Doc. 83.)

7.     On November 15, 2010, the United States Attorney's Office of the Western District of Missouri learned the defendant had a plan in motion to have both the victim and Assistant United States Attorney assigned to the case killed.  On November 22, 2010, the U.S. Department of Justice's General Counsel Office granted the requested recusal to the Western District of Missouri for the murder-for-hire against the AUSA.   Because the defendant posed a threat to both the AUSA and the victim, the investigation pertaining to both were referred to the District of Kansas until the immediate threat against the AUSA was resolved.

8.     On December 10, 2010, the U.S. District Court affirmed the U.S. Magistrate Court's detention order.  The U.S. District Court was unaware of the murder-for-hire scheme against the AUSA and the victim at this time.  The order was based solely on the prior facts presented to the U.S. Magistrate Court at the detention hearing.

9.     On December 13, 2010, the defendant filed a notice of appeal from the District Court's detention order to the Eighth Circuit Court of Appeals.  (Doc. 92.)

10.     On December 14, 2010, undersigned counsel were informed that the General Counsel's Office permitted them to resume the investigation and prosecution pertaining to the murder-for-hire involving the victim, and any other related charges involving the victim or other witnesses.  The General Counsel's office was aware of the investigation overlap between the murder-for-hire of the victim and prosecutor.

11.     On December 22, 2010, the defendant filed a statement of the case for his detention appeal to the Eighth Circuit Court of Appeals.  (Case #10-3774.)  In the appeal to the Eighth Circuit, the defendant did not confine himself to the sole question of whether the record supported the decision of the district court to detain the defendant.  The defendant raised extraneous issues outside the scope of the appeal and outside of the record.  For example, complaining about the conditions of his detention and that he was now detained in Bates County, without explaining the context for the transfer.  (Def.  Brf. 11.)

12.     On January 6, 2011, the Government filed its response to the defendant's appeal to the Eighth Circuit.  (Case #10-3774.)  The Government's response contained one section that included facts outside of the record pertaining to the murder-for-hire against the prosecutor and victim.  (Govt. Brf. 12.)  The Government did not request any finding of fact from the Eighth Circuit Court of Appeals.  The Government separated this section in its response[2] and further

_____

[2]The relevant facts outside of the record provided to the Eighth Circuit were separated and distinguished from the facts presented to the district court, and relied upon for the response to the detention appeal.  The "Findings of Fact Relied Upon for Detention" were outlined in Section A.  (Govt. Brf. 5.)  The "Facts Relevant to Cook's Current Custodial Facility" were outlined in Section B.  (Govt. Brf. 12.)

made abundantly clear that these additional "facts are not a part of the record." (Govt. Brf. 12.) The Government included this section for two limited purposes: first, to respond to the defendant's complaint to the court that the defendant was transferred to Bates County without providing the explanation for that move; thereby making the transfer appear punitive, arbitrary and done in an attempt to interfere with access to counsel; and second, because the Eighth Circuit had precedent for ordering immediate release upon reversing a district court's detention order, the Government wanted to advise the court that if the district court was reversed on the facts in the record, an immediate release order was not appropriate as the Government had newly obtained evidence to present in support of detention. The Government limited its argument in support of the district court's detention order solely to the facts on the record.

13. On January 12, 2011, the defendant filed a reply to the Government's response, reiterating at great length for the Eighth Circuit Court of Appeals that the facts pertaining to the murder-for-hire were outside of the record. (Case #10-3774.)

14. On January 19, 2011, the Eighth Circuit Court of Appeals affirmed the district court's order detaining the defendant.

15. On February 16, 2011, the defendant petitioned the Eighth Circuit for a rehearing en banc on the defendant's appeal to be released from detention, again pointing out at great length that the murder-for-hire facts were not a part of the district court record.

16. On March 17, 2011, the Eighth Circuit denied the petition for rehearing en banc.

17.     On March 30, 2011, a federal grand jury in the Western District of Missouri returned a superseding indictment against Defendant Cook involving his misconduct while in custody, which contained additional charges of:  Count Fourteen:  Attempted Tampering with a Victim, in violation of 18 U.S.C. § 1512(a)(1)(A); Counts Fifteen-Sixteen:  Use of an Interstate Facility in Commission of Murder for Hire, in violation of 18 U.S.C. §§ 1958; Count Seventeen: Attempted Witness Retaliation, in violation of 18 U.S.C. § 1513(a)(1); and Count Eighteen: Attempted Tampering with a Witness, in violation of 18 U.S.C. § 1512(b)(1).

18.     As a part of voluntary discovery, on March 22, 2011, before the superseding indictment, and then again on April 4, 2011, just a few days after the superseding indictment was filed, government counsel provided defense counsel with *all* newly obtained discovery pertaining to the defendants new criminal conduct as alleged in the additional counts contained in the superseding indictment.   All other discovery in the government's file was previously provided to counsel.

19.     On July 11, 2011, the defendant filed this motion with the Court to reopen a detention hearing.   Paragraphs 1-37 of the defendant's motion deal with the defendant's claims that the Government's evidence is weak with respect to the newly added charges on the superceding indictment involving his misconduct while in custody.  These paragraphs inaccurately summarized the contents of the voluntary discovery provided to the defendant. Paragraphs 38 - 52 deal with the defendant's arguments against evidence presented at the detention hearing held on September 28, 2010.  Paragraphs 53 - 59 deal with the defendant's repeated claims regarding his confinement conditions.  However, none of the information

contained in any of these paragraphs, as outlined below, provide the Court with newly discovered material evidence which pertain to the issue of detention.

## SUGGESTIONS IN OPPOSITION

A detention hearing can be reopened in limited circumstances only. Title 18, United States Code, Section 3142(f)(2)(B) outlines those specific circumstances:

> The hearing may be reopened, before or after a determination of the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movement at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.[3]

Thus, for a new detention hearing to be granted, the defendant carries a burden to outline for the court (1) new information that was not known to him at the time of his first hearing; and (2) demonstrate how the information is *material* to an issue of detention or release.

Specifically, the new information must materially relate to one of the enumerated factors outlined in Section 3142(g):

1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2. The weight of the evidence against the person;

---

[3] Pretrial detention may be ordered only where:

"The United States shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions under subsection (c) will reasonably assure the defendant's appearance."

*United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (*en banc*).

7

3.   The history and characteristics of the person; and

4.   The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Further, under 18 U.S.C. § 3142(e), a judicial officer may rely on an evidentiary rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and that the safety of the community.  As outlined extensively in the government's original detention motion and in the responses to the defendant's appeals to the district court and Eighth Circuit, the defendant's charges in this case trigger the statutory presumption.  Even if this presumption is rebutted, in addition to the Section 3142(g) factors, Congress mandated that this defendant, due to the nature of his charges, as a general rule poses a special risk, and the fact that a presumption exists must be factored in with all the other factors that Congress instructed the Court to weigh when making the decision about pretrial detention.   The detention order found that "with or without considering this presumption" that the defendant did not qualify for release based on the other Section 3142(g) factors alone.  (Doc. 52, p. 12.)

"The statute governing detention determinations clearly limits the circumstances in which a judicial officer has discretion to consider reopening a detention hearing." *United States v. Rodriguez-Adorno*, 606 F.Supp.2d 232, 237 (D. Puerto Rico 2009).   A court should not hear new evidence at a detention hearing that does not qualify under section 3142(f).  *Id.,citing United States v. Bergner*, 800 F. Supp. 659, 661-662 (N.D. Ind. 1992).

The defendant seems to argue that what he believes are holes in the government's case should give him the basis to reopen detention because they go to the "weight of the evidence

8

factor for detention." The *Rodriguez-Adorno* decision explained that the defendant "seems to view the statutory provision as giving movants carte blanche to reopen detention hearings whenever any evidence is uncovered bearing on the defendant's likelihood for conviction (as then typically bear on the "weight of the evidence factor")..... This view of the statutory provision for detention review is simplistic." *Id.*

Congress warned against detention hearings becoming de-facto mini trials during which a defendant's guilt or likelihood of conviction is debated. *See United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985), *citing* S.Rep. No. 225, 98th Cong., 1st Sess. At 22 (1983), reprinted in 1984 U.S. Code Cong. & Ad. News at 25 (Supp. 9A); *Rodriguez-Adorno*, 606 F.Supp. at 237, *citing Delker,* 757 F.2d at 1395. "The Court's role in determining a defendant's detention status does not and should not include any analysis of the credibility or the sufficiency of evidence as it relates to potential for conviction, but only analyzes it as it relates to the factors enumerated by the governing statute." *Rodriguez-Adorno*, 606 F.Supp. at 237, *citing United States v. Windsor*, 785 F.2d 755, 757 (9th Cir. 1986)(Section 3142 "neither requires nor permits a pretrial determination that the person is guilty; the evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community")(internal quotes and citations omitted).

It is also well established that "detention hearings are not the proper forum for hashing out probable cause. A grand jury indictment is sufficient to establish probable cause for the purposes of detention." *Rodriguez-Adorno*, 606 F.Supp. at 237, *citing United v. Vargas*, 804 F.2d 157, 163 (1st Cir. 1986).

Further, even if a defendant meets his "burden of production" of producing new material information actually pertaining to detention, if the information produced does not diminish the government's already met burden of persuasion, convincing the Court that no condition or combination of release will reasonably assure the defendant's appearance and the safety of the community, the defendant still is not entitled to a hearing. *United States v. Rodriguez-Adorno*, 606 F.Supp. 2d at 234-35.

In the motion before the court now, the defendant fully fails to trigger a reopening of his detention hearing because he brings no information previously unavailable to him bearing materially on his detention status within the meaning of the statute.

Throughout the defendant's 32 pages of his motion, the defendant makes severe accusations against government counsel and the Federal Bureau of Investigation agents, for things such as, but not limited to, presenting false testimony (Def. Mot., 19, 22, 24-25, 30), coaching and bribing witnesses (Def. Mot., 2-3, 12, 14, 16, 18-19), withholding exculpatory evidence (Def. Mot., 2,7,11), failing to interview possible exculpatory witnesses (Def. Mot., 17-18), misrepresenting facts to the Eighth Circuit Court of Appeals (Def. Mot., 11), charging a case that the District of Kansas declined (Def. Mot., 9), proceeding with an investigation in violation of internal Department of Justice policies and internal orders (Def. Mot., 11), and generally misleading the grand jury and investigating and prosecuting the case in an unethical manner. The defendant's claims are unfounded and an attempt to distract the court from the record supporting detention as established at the original hearing and upheld on appeal. The government proceeds with responding to the defendant's motion based on the limited legal issue at hand.

10

Paragraphs 1-37 of the defendant's motion deal with the defendants claims that the government's evidence is weak for the newly added charges on the superceding indictment involving his misconduct while in custody. This entire section never addresses any of the evidence presented at the detention hearing or the lead charges in the indictment. It solely pertains to some of the secondary charges contained only in the superseding indictment: Count Fourteen: Attempted Tampering with a Victim, in violation of 18 U.S.C. § 1512(a)(1)(A); Counts Fifteen-Sixteen: Use of an Interstate Facility in Commission of Murder for Hire, in violation of 18 U.S.C. §§ 1958; Count Seventeen: Attempted Witness Retaliation, in violation of 18 U.S.C. § 1513(a)(1). The defendant committed these crimes after his detention hearing and while in custody. Thus, of course, this information was not available to defense counsel at the time of the detention hearing. The acts had not yet been committed, the discovery had not yet been created, and the charges related to them had not yet been filed. The fact that a defendant committed additional criminal acts in custody, resulting in newly created and disclosed discovery, does not create a basis for him to use that new discovery to assert that newly discovered evidence warrants a reopening of the detention hearing. Neither the Magistrate Court nor the District Court's detention orders relied on any aspect of the investigation of the defendant's conduct while in custody. However, if anything, the defendant's behavior in custody only confirms the wisdom of the Court finding that he posed a risk to the community.

Further, there is no indication that the Government's mention of the defendant's misconduct while in custody influenced the Eighth Circuit Court of Appeals when he appealed his issue of detention. The Government quite clearly separated this information out from the facts in the record related to detention and affirmatively informed the Eighth Circuit Court of

11

Appeals these facts related to his recent custodial misconduct were *not* a part of the record. (Govt. Brf. 12.)  As noted above, they were only included for the limited purpose of responding to the defendant's complaints of being transferred to a new facility (facts he included outside of the record) and to put the court on notice not to release the defendant without resubmitting to the district court for a new hearing.

Even if the Government had not made it abundantly clear that the recent misconduct was not a part of the record, the defendant, in lengthy subsequent pleadings pointed it out to the Eighth Circuit at great length, both in the reply to the Government's response and in an additional petition for rehearing en banc.  The Eighth Circuit denied both the defendant's appeal and petition for rehearing.

Paragraphs 38 - 52 of the defendant's motion deal with the defendant's arguments against evidence presented at the detention hearing held on September 28, 2010.  While at least this section discusses the evidence relied on at the detention hearings, it still fails, as outlined below, to offer the Court new material information related to the issue of detention.

-       In paragraph 38 of the defendant's motion, the defendant does not cite to any new evidence, but complains that the government's evidence at the detention hearing was not strong enough because the evidence was summarized by the case agent and the witnesses were not all personally called to testify at the hearing.   These same arguments were made at the detention hearing itself and in the defendant's appeals to the district court and Eighth Circuit Court of Appeals.   Informal methods of proof are appropriate at detention hearings because Congress did not want detention hearings to resemble mini trials.  *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986), *citing Delker*, 757 F.2d at 1396.  Indeed, Section 3142(f)

12

explicitly states, "[t]he rules of admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."

-   In paragraphs 39, 42-43 of the defendant's motion, the defendant contests that he did not go to Defendant Bagley's house "routinely" and argued he was only there "three times." SA Sam Benson's testimony was based on the interview with the victim and on his interview with Marilyn Bagley in September 2009. During that interview, Marilyn Bagley told SA Benson that Defendant Cook was at their residence about "once a month." After Marilyn Bagley was notified that she was a target[4] of a grand jury investigation and both her husband and Defendant Cook were charged on the indictment, on December 20, 2010, Marilyn Bagley changed her story. During this post-indictment interview, she switched her statement that Defendant Cook visited the Bagley residence from "once a month" to "about three times." Without disclosing the circumstances of this December 20, 2010 interview, the defendant is now trying to use this interview as evidence to call into question SA Benson's testimony at the detention hearing. During this same interview, Marilyn Bagley now says Defendant Cook only engaged in oral sex with the victim once and that it was consensual. In addition to being a target at that time and having her husband and Defendant Cook charged at the time of this December 20, 2010, interview, Ed Bagley had also had months to coach her as to what to say in the interview (all of which were recorded from CCA records and custody calls). This latter report in December 2010 hardly unveils new material evidence to support a new detention hearing for Defendant Cook. Further, for purposes of detention, it is inconsequential how frequently Defendant Cook went to Defendant Bagley's residence to commit acts of sexual torture on the

---

[4]Marilyn Bagley was not charged until the superseding indictment.

victim. It is the acts of torture themselves that establish the dangerousness of the defendant, not the frequency of those acts.

- In paragraphs 40-41 of the defendant's motion, the defendant points to one medical record of the victim which involved a routine pelvic exam conducted months after she was at the Bagley residence. The defendant tries to utilize this one record, taken out of context of all of her medical records, which also was not an exam of all of the victim's permanent injuries, as a basis to ask for a new detention hearing. Such a report, which the defendant has had for well over a year, has no material bearing on whether the defendant poses a flight risk or danger to the community.

- In paragraphs 44-45 of the defendant's motion, the defendant points to the victim's photo shoot in Hustler magazine and witnesses that were involved in that photo session. Again, the defendant has had this information since the first round of discovery in the case. The defendant also fails to highlight the relevant incriminating part of these witness interviews. But regardless, neither count in the indictment dealing with the victim's transport to California for the photo shoot requires that the government prove she was coerced into this specific activity. Count Six, enticement to travel for sexual activity, and Count Seven, transportation for sexual activity, deal with this transport for sexual acts and the photo shoot. The victim will be the first one to testify at trial that she was excited to go to California for the photo shoot because it meant both temporary relief from the defendants' torture sessions (she could not have bruising, cuts, or burn marks for the photo shoot), and an opportunity to be discovered by someone in California, offering her a possible out from the control of Defendant Bagley. Most importantly, Defendant

14

Cook is not even charged in these counts. Thus, witnesses pertaining exclusively to these charges hardly offer him a basis for a new detention hearing.

- In paragraphs 46-47 of the defendant's motion, the defendant argues that the court incorrectly found that the defendant had a criminal history. The defendant confuses "criminal history" with "criminal convictions." The fact that the defendant does not have criminal convictions, does not make his array of issues in his criminal history irrelevant. The Court correctly noted the defendant's criminal history consisting of active warrants as a wanted person and for failure to appear, and the defendant's resisting compliance at the time of the search warrant and resisting arrest when law enforcement tried to apprehend him. (Doc. 52, pp. 10, 12.) Again, nothing in these paragraphs offers new information. The defendant's criminal history is the same as presented at the detention hearing, stipulated by the defendant, and found by the Court.

- In paragraphs 48-52 of the defendant's motion, the defendant complains again that the government did not use first hand evidence to support its contention that the defendant engaged in a history of abuse. This is the same argument already made at the detention hearing and does not reveal new evidence. The defendant fails again to recognize that it is within the court's discretion to accept evidence by eye witnesses, summarizing witnesses, or proffer. *See Delker*, 757 F.2d at 1396, *citing United States v. Payden*, 598 F. Supp. 1388, 1398 n. 14 (S.D.N.Y. 1984). Furthermore, the statements from JP and JP herself were available to the defendant at the time of the detention hearing. Thus, this does not constitute new evidence. The defendant also could have called JP to testify, but he chose not to do so. "Courts have interpreted strictly the statutory provision authorizing the reopening of a detention hearing, holding that

15

hearings should not be reopened if the evidence proffered was available at the time of the hearing. *United States v. Dillon*, 938 F. 2d 1412, 1415 (1st Cir. 1991), *see also United States v. Jerdine,* 2009 WL 4906564 *3 (N.D. Ohio).

The defendant then goes on to rely on telephone calls recorded from CCA between himself and his girlfriend, JP, to try to claim that the phone calls are new evidence that should trigger a new detention hearing. First, these calls were generated by the defendant himself. Second, nothing said in these calls impacts the fact that when JP met with the government without the defendant present, she detailed a much different portrayal of him, as documented in FBI 302s. SA Sam Benson correctly testified to these interviews at the detention hearing.

The defendant has applied great pressure on JP to not cooperate with the government. While the investigation was still pending, he lied to law enforcement and hid her whereabouts. The defendant then retained his defense attorney to represent her, and then his defense attorney's husband. After he was charged in the case, the defendant and his father have paid her living expenses, mortgage, and for her new attorney they retained to represent her. The defendant has engaged in persistent pressure and manipulation of JP over the phone, as documented in these same numerous recorded calls from CCA. The defendant also took measures to get JP out of the country so she could not testify against him.[5]

Despite this, when JP met with government counsel again in March 24, 2011, even with the attorney present retained by the defendant, JP confirmed her original statement provided to law enforcement and still provided incriminating statements against the defendant. Including the

---

[5]JP is the victim of Count Eighteen, Attempted Tampering with a Witness in violation of 18 U.S.C. §§ 1512(b)(1) and 2.

fact that she did not want to engage in the bondage activities documented in images on the defendant's computer, including those admitted at his detention hearing. The defendant's contention, as laid out in Paragraphs 48 - 51, deal with statements that JP has made to the defendant in phone calls to CCA where she tells him what he wants to hear. This hardly constitutes new material evidence to his issue of detention. If anything, they depict the vast power and control that the defendant maintains over JP even from a custodial situation. Further, as noted in the Court's detention order, "regardless of whether FV2 consented to the violent sexual conduct with defendant, she clearly did not consent to having her nose broken by him while in a car which is evidenced by her call to 911, nor did she consent to being strangled, also evidenced by her call to 911." (Doc. 52, p. 12.)

In paragraph 52 of the defendant's motion, the defendant indicates that JP has identified other women in the bondage pictures on the defendant's computer. While JP was asked about this information, she was not able to provide identifying information about these additional women. SA Benson correctly described these images at the detention hearing.

Paragraphs 53 - 59 of the defendant's motion deals with the defendant's repeated claims regarding his confinement conditions. The conditions of the defendant's confinement are irrelevant to the legal issue of this motion and have already been litigated separately. The government is not aware of any of these new complaints that the defendant has now added. His repeated complaints, lack of access to counsel and monitoring of attorney-client communications, were directly refuted at the last hearing before this court by both officials housing him at his facility and the U.S. Marshals. The defendant is not being denied access to counsel and the facilities are not monitoring communications between him and his attorney. Further, conditions

17

of confinement are not a basis for a new detention hearing. *United States v. Simpson*, 408 Fed. Appx. 830, 831, 2011 WL 135816 (5th Cir. 2011). Neither is a defendant's claim that his confinement is materially impairing his ability to prepare for trial. *United States v. Petters*, 2009 WL 205188 *1-2 (D. Minn.). The defendant also complains about the length of time he has been in pretrial custody. "Length of detention is irrelevant because it is not material to the issue of risk of flight or dangerousness." *United States v. Longs,* 2008 WL 906797 *2 (D.Minn), (*citing United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Finally, on page 30 of his motion, the defendant points to witnesses cited by a St. Louis Post Dispatch article as evidence of discrepancies in the government's case. Random citizens of Lebanon, Missouri interviewed by a reporter hardly constitute new and material evidence indicating that the defendant should have a new detention hearing.

Like the defendant in *Rodriguez-Adorno*, Defendant Cook's motion analyzes the discovery from his slanted perspective and tells the court the government's case is weak. Like Defendant Cook, "Mr. Rodriguez brings forth passionate *arguments* regarding the credibility and sufficiency of evidence available through the regular, predictable process of discovery and defense investigation, such as video images, FBI reports, witness interviews and the like. Mr. Rodriguez exhaustively lays out all of the evidence currently known to him in the case and then systematically analyzes it, concluding that the government's case is weak. This court does not view such analytically based conclusions as evidence or information previously unavailable bearing materially on detention issues within the meaning of the statute." *Rodriguez-Adorno*, 606 F.Supp. at 237.

In *Rodriguez-Adorno*, the court wrote:

18

... the Court cannot fathom that Congress intended the possibility of detention status modification to be twisted into an open invitation for parties to bring motions for detention review at any and every state of trial in which new information arises regarding the weight and credibility of evidence in the case. Why? Because criminal trial practice itself involves a constant evolution, if not production, of information. Routine discovery procedures and investigative work such as witness interviews, taking statements, and subpoenaing documents, inevitably help parties uncover, clarify, and interpret the credibility and sufficiency of evidence in criminal cases, leading to development and refinement of case theories. The need for judicial efficiency and speed "necessarily makes arraignments, probable cause determinations, and bail hearings typically informal affairs, not substitutes for trial or even discovery. *Id.* at 238*, citing United States v. Acevedo-Ramos*, 755 F.2d 203, 206 (1st Cir. 1985)(internal citations omitted).

"If Congress intended detention hearings to become settings for evaluating the information inevitably accrued by discovery and the like, it would have required (or allowed) bail status to be revisited for each and every defendant following critical stages of discovery and other moments of evidentiary significance. Congress has not enacted such a statute. Instead, Congress limited the circumstances in which a District Court or other judicial officer has discretion to review detention." *Id.*

The *Rodriguez-Adorno* court went on to state "imagine the absurdity resulting from a system permitting parties to have unlimited bites at the detention apple—detention hearings would be reopened every time a defendant learned of a credibility issue with a government witness, or each time a new statement was collected to support or undermine a theory of the case." *Id.* at 238, fn. 10.

Defendant Cook, like the defendant in *Rodriguez-Adorno*, brings forward some limited information that was not available to him at the time of his detention hearing. In Defendant Cook's case, this evidence was not available because it involved criminal acts the defendant had not yet committed, and therefore could not yet be investigated or reported, or information that was disclosed in later discovery, either because it was obtained by the government at a later date,

19

or because it was disclosed at a later date simply because it was not relevant to the issues at detention. Like the Court found in *Rodriguez-Adorno*, "while a movant may certainly (and usually will) become aware of new evidence as a result of discovery or investigation, and that evidence will almost certainly bear on at least the "weight of the evidence" and "nature of the charge" factors considered during a detention review, this Court believes that Congress intended new information to signify something other than a defendant's own evaluation of the strength of the case against him: truly changed circumstances, something unexpected, or a significant event. *Rodriguez-Adorno*, 606 F.Supp. at 237, *citing Patriarca*, 948 F. 2d , 794. Like *Rodriguez-Adorno*, while Defendant Cook points to new information, he fails to show how it materially bears on the issue of detention in a way other than his personal evaluation of the government's case against him. "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him. *United States v. Jerdine,* 2009 WL 4906564 (N.D. Ohio), *citing Rodriguez-Adorno*, 606 F.Supp. at 239.

Defendant Cook's motion, if granted, would only serve as an improper mini-trial before trial. The Defendant would be given the opportunity, without proper basis, to cross examine government witnesses who will testify against him. "A pretrial detention hearing is not intended to serve as a vehicle for discovery from the government. Nothing in the statute or the legislative history indicates otherwise." *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986). "The courts unanimously agree that a detention hearing is not a vehicle for discovery. *United States v. Lewis,* 1994 WL 579928 (D.Kan.), *citing Suppa*, 799 F. 2d 115, 120, *United States v. Acevedo-Ramos*, 755 F.2d 203, 207-08 (1st Cir. 1985), *United States v. Hazzard*, 598 F. Supp. 1442, 1453

(N.D. Ill. 1984), *United States v. Gatto,* 729 F.Supp. 1478, 1481 (D.N.J. 1989), *United States v. Aleman*, 1990 U.S. Dist. LEXIS 3745 (N.D. Ill). "Neither the statute or the legislative history indicates otherwise. *Id. citing Suppa*, 799 F.3d at 120. *See also Martir*, 782 F.2d at 1145; *Delker*, 757 F.2d at 1396; *United States v. Davis*, 1991 U.S. Dist. LEXIS 89069 (D. Kan. 1991)(bond hearing is not the appropriate time to try the merits of the government's case against the defendant.)

If the defendant has convinced himself that the Government's case is as he summarized for the court in his motion, then he should take his case to trial and use admissible information to cross examine witness and put on his defense. The trial setting is the proper forum for this test of the government's evidence, not a second detention hearing.

## CONCLUSION

WHEREFORE, because the defendant has failed to meet his burden demonstrating that he has obtained new evidence not available to him at the time of the detention hearing that also

materially shows he no longer poses a flight risk or risk to the safety of those in the community, the defendant's motion to reopen the detention hearing should be denied.

Respectfully submitted,

Beth Phillips
United States Attorney

By

/s/Paul S. Becker
Paul S. Becker
Assistant United States Attorney
Chief, Violent Crimes Strike Force Unit


/s/Cynthia L. Cordes
Cynthia L. Cordes, #6283752
Assistant United States Attorney
Human Trafficking Coordinator


/s/Cynthia L. Cordes for
John Cowles, #11797
Assistant United States Attorney


Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122

clc:sgs

22

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was delivered on July 22, 2011, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

Carter Collins Law
Law & Schriener LLC
141 North Meramec Avenue, Suite 314
St. Louis, Missouri 63105-3750

Lance David Sandage
The Sandage Law Firm, PC
4700 Belleview Avenue, Suite 404
Kansas City, Missouri 64112

/s/Cynthia L. Cordes
Cynthia L. Cordes
Assistant United States Attorney

23