IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-00244-02-CR-W-DW |
| | ) | |
| BRADLEY COOK, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT COOK'S
MOTION TO EXCLUDE COOPERATING WITNESS TESTIMONY
AND REQUEST FOR A RELIABILITY HEARING**

COMES NOW the United States of America, by Beth Phillips, United States Attorney, and undersigned counsel, all for the Western District of Missouri, and offers the following response in opposition to the defendant's motion to exclude witness testimony and request for a reliability hearing. The government offers the following suggestions in opposition to the defendant's motion.

**SUGGESTIONS IN OPPOSITION**

The defendant's motion copied lengthy sections from his previously filed motion to reopen the detention hearing (Doc. 189) in which he repeats his belief that the government's evidence against him for the related charges is weak. (Def. Mot. p. 7-10). The defendant once again attempts to obtain a pretrial hearing to engage in a mini-trial without any legal basis to do so. As outlined below, the law does not allow for an "exclusion" of witnesses or a pretrial hearing to test their veracity, regardless of whether they are provided a benefit for that testimony or not. Although receiving a benefit would not deem a witness's testimony inadmissible or qualify the witness for examination at a pretrial hearing, interestingly, in this case none of the

witnesses which are the subject of the defendant's motion have received any type of benefit for their statements made to the government. Thus, while the analysis below addresses the situation where a witness is a paid informant, co-defendant who has plead guilty and received a deal for a testimony, or another inmate who has otherwise agreed to testify for a reduced sentence, none of the witnesses the defendant complains about fit into these categories.

Furthermore, even if they did, the defendant's cited cases do not support his position.

I.      **Pretrial Exclusion or Veracity Hearing Not Allowed to Test the Veracity of Witnesses**

The defendant claims the government is providing credit towards witnesses' sentences who provided statements to the government. However, the government has not offered any such benefit to the witnesses for their statements. The inmates that the defendant questions in his motion provided statements because their attorneys brought them forward out of concern for the information their clients conveyed to them about the defendant's murder-for-hire plan, or the inmates offered to testify against the defendant out of "purse disgust" of the defendant's illegal conduct.[1] One of the witnesses has completed his sentence and is already released, and two others were just recently sentenced without the government providing them a U.S.S.G. § 5K1.1 motion, or any other type of credit towards their sentences.

---

[1] Defendant Cook continues to highlight an inmate he refers to as "JC" in his pleadings, and has criticized the government for not interviewing him. (Def. Mot. p.10). Inmate "JC" was contacted and "interviewed" by an investigator for Defendant Cook's defense counsel. Defense counsel for Defendant Cook arranged such a meeting without the permission or knowledge of "JC"'s attorney. "JC" sent a hand written letter to U.S. District Court Judge Dean Whipple, which was passed on to counsel on April 14, 2011. Since that date, Government counsel have attempted to an interview with "JC" to find out what he claims is exonerating evidence for Defendant Cook. However, "JC" has continued to refuse to meet with the FBI or the U.S. Attorney's Office. In fact, counsel for "JC" consented and arranged the interview, and "JC" cancelled the meeting.

However, even if the government had offered to recommend credit towards a witnesses' sentence for his cooperation, such a practice is well accepted and does not in any way deem the exclusion of the witnesses' testimony appropriate, nor does it trigger a pretrial hearing for the defendant to test the witnesses' veracity.

"Testimony does not become legally unsubstantial because the witness stands to gain by lying; the defendant is entitled to cross-examine such witnesses to expose their motivations, and it is up to the jury to decide whether the witness is telling the truth despite incentives to lie." *United States v. Crenshaw*, 359 F.3d 977, 988 (8th Cir. 2004). In *Hoffa v. United States*, the United States Supreme Court established the appropriate safeguards to witnesses who received benefits from the government for their testimony. 385 U.S. 293 (1966). In *Hoffa*, the conviction depended upon the testimony of an informer who received both money and clemency for his cooperation. The Supreme Court rejected the argument that the informer's testimony was constitutionally inadmissible because he had motives to lie. "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." *Id.* at 311. See also, *United States v. Reeves*, 83 F.3d 203, 206-07 (8th Cir. 1996) (upholding convictions that depended on the testimony of three admitted co-conspirators who had been given reduced sentences in exchange for their testimony); *United States v. Lopez*, 42 F.3d 463, 466-67 (8th Cir. 1994) (upholding convictions based on testimony of a paid informant who had been granted immunity from prosecution).

Courts have long held that the jury is in the best position to test a witness's credibility and the defendant may elicit outside motivations to lie through cross-examination. *United States v.*

*Jakoubek*, 411 F.3d 951, 953 (8th Cir. 2005). Cross examination at trial, not a pretrial hearing, "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). In *Jakoubek*, the court noted, ". . .the jury is then free to give whatever weight they choose to [the informant's] testimony." 411 F.3d at 953, citing *United States v. Martinez*, 958 F.2d 217, 218 (8th Cir. 1992). However, even then, the Court also has great discretion to limit a defendant's cross-examination of an informant. "A district court has wide latitude to impose reasonable limits on the cross examination of a witness regarding his motivation to testify." *Jakoubek*, 411 F.3d at 953, citing *Ortega,* 150 F.3d 937, 941 (8th Cir. 1998). While the defendant would like the court to step into the role of the juror, "[i]t is the jury's job to determine whether these witnesses could be trusted." *United States v. Torres*, 552 F.3d 743, 747 (8th Cir.2009), citing *United States v. Baker*, 367 F.3d 790, 798 (8th Cir. 2004). "...[I]t is within the province of the jury to make credibility assessments and resolve conflicting testimony." *Torres*, 552 F.3d at 747, citing *United States v. Bower*, 484 F.3d 1021, 1025-26 (8th Cir. 2007). "The jury, however, is always the ultimate arbiter of a witness's credibility. *United States v. Espino*, 317 F.3d 788, 794 (8th Cir. 2003), citing *United States v. Witschner*, 624 F.2d 840, 843 (8th Cir. 1980). "The District Court properly admitted the informant's testimony and left it to the jury to assess his credibility and decide what weight, if any, to give his testimony." *United States v. Harris*, 193 F.3d 957, 958 (8th Cir. 1999). *See United States v. Skinner,* 433 F.3d 613, 616 (8th Cir. 2006) ("we have held on numerous occasions that credibility is properly the province of the jury); *United States v. Osuna-Zepeda*, 416 F.3d 838 (8th Cir. 2005) (credibility is an issue for the jury to decide where cooperating witness received deal with government to testify); *United States v. Lopez*, 42 F.3d 463, 466 (8th

Cir. 1994) (it is the province of the jury to weigh a witnesses' credibility, even where the witness was a paid informant).

## II. Defendant's Cited Cases Do Not Support His Position

The defendant begins by citing *On Lee v. United States,* 343 U.S. 747, 757 (1952) for the proposition that informers raise a question of credibility. (Def. Mot. p. 6). However, the defendant does not include the sentence which directly follows his quote, which states, "To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross examination and to have the issues submitted to the jury with careful instructions." *Id.* at 973-74. The *On Lee* court goes on to further rule, "we cannot say that testimony such as this shall, as a matter of law, be refused all hearing." *Id.* at 974.

The defendant cited two Ninth Circuit cases, *United States v. Bernal-Obeso,* 989 F.2d 331, 333 (9th Cir. 1993) and *Northern Mariana Islands v. Bowie*, 243 F.3d 1109, 1123 (9th Cir. 2001) for the proposition that criminal informants are cut from untrustworthy cloth. (Def. Mot. p. 6-7). But even the Ninth Circuit stated in *Bernal-Obeso* that "our criminal justice system could not adequately function without information provided by informants and without their sworn testimony in certain cases." *Bernal-Obeso*, 989 F.2d at 334. "Innumerable important convictions have been appropriately attained using informants' testimony." *Id.* at 335. Immediately after the defendant's cited quote in *Northern Mariana Islands v. Bowie* (Def. Mot. p. 7), the court writes in the next sentence, "our system long ago recognized and embraced this kind of favoritism because, given our strict and demanding constitutional mandates and rules of evidence, not to do so, would insulate many vile and dangerous outlaws from the reach of the law....[court lists examples of criminals that would not have met "their just fates"]...A well

5

constructed and carefully managed deal can make a significant contribution to the rule of law, and to justice." 243 F.3d at 1123-24.  Nowhere in these Ninth Circuit cases cited by the defendant is there support for the defendant's motion for exclusion or a pretrial hearing to test veracity.  Rather, these courts state that the defendant's test of the information is through cross examination at trial.  989 F.2d at 335.

The defendant's cited case from the Fourth Circuit, *United States v. Levenite*, 277 F.3d 454, 461 (4th Cir.2002) also does not stand for his position for exclusion or a pretrial hearing to test an informant's veracity.  After the defendant's quote about the "core of the trial's legitimacy," (Def. Mot. p. 7), the court writes in the next sentence, "Yet, even though compensation for testimony can be troubling, it does not follow that the use of such an arrangement renders such testimony constitutionally inadmissible per se." *Id.* at 461.  The court goes on to cite the Supreme Court's opinion in *Hoffa* ruling that the safeguard to test the veracity of a witness is through cross examination.  *Id.* at 461, citing *Hoffa,* 385 U.S. at 311.  But the *Levenite* opinion does not stop there.  "Therefore, it has long been recognized that grants of immunity, plea agreements, and sentencing leniency are appropriate tools for use in the criminal justice system.  Indeed, the Rules of Criminal Procedure explicitly authorize these devices, and this court has approved them." *Id.* at 462, citing Fed. R. Crim. P. 11(e), *United States v. Richardson*, 195 F.3d 192, 194-97 (4th Cir. 1999).  "Similarly, the payment of fees to witnesses as an incentive to come forward and testify has explicitly been approved by Congress. *Id., citing* 18 U.S.C. § 3059B; 21 U.S.C. § 886(a).

The defendant also cites a Fifth Circuit case, *United States v. Cervantes-Pachecho*, 826 F.2d 310, 315 (5th Cir. 1987), in support of his motion. (Def. Mot. p. 7). However, the quote cited is cut short and incomplete. While the court does include the partial quote cited by the defendant, "[i]t is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence," the sentence does not stop there, it includes a comma and states, "but courts uniformly hold that such a witness may testify so long as the government's bargain with him is fully ventilated so that the jury can evaluate his credibility." *Id.* The case involved a witness who was paid a fee. The court conclusively held that the testimony was admissible at trial and that "adequate rules are in place to protect against abuses." None of the listed rules included a pretrial hearing to test the veracity of the witness's testimony. Rather, the court stated that the rules in place included disclosure by the government that the witness received a payment, offering the accused an adequate opportunity to cross-examine the witness about the compensation, and giving the jury an instruction about the witness's compensation. *Id.* at 315-16. Contrary to the defendant's cited purpose of the case, the court goes on to overrule an older opinion in the Circuit that appeared to create an exclusionary rule for such testimony, holding that "we remain confident in the jury system and the ability of the jury to weigh the defendant's argument about the inherent unreliability of 'purchased testimony.'" *Id.* at 316.

The defendant then cites two state court decisions from Oklahoma and Nevada in support of his proposition that "at least two courts have ordered reliability hearings when incarcerated informants are proposed witnesses." (Def. Mot. p. 11). Both cases are death penalty cases. In the defendant's first state court case cited, *Dodd v. State*, 993 P.2d 778, 783 (Ok. Ct. Of Crim. App. 2000), the informant recanted his statement prior to testifying at trial, and the trial judge did

7

not let the defendant cross examine the informant about the recantation or impeach him with the letters he sent to the District Attorney's Office discussing the recantation of his statement. Despite the defendant's representation in his motion (Def. Mot. p.11), this state appellate court never stated that a pretrial hearing is the proper mechanism in which to test a paid informant's testimony, but rather stated that 10 days before trial the government needs to disclose the informant's criminal history and any inducements offered to make for the testimony, the specific statements of the informant, all other cases in which the informant testified or offered statements, and whether if at any time the informant recanted that testimony or statement, and any other information relevant to the informant's credibility. *Id.* at 784. The state appellate court reversed the case because of the trial's courts limitation during cross examination of the informant, not because the trial court failed to provide a pretrial hearing to test the informant's veracity. *Id.*

The second state court case cited by the defendant, *D'Agostino v. State*, 823 P.2d 283, 285 (Nev. 1992), was also a death penalty case. The testimony had to deal with an informant's testimony during the penalty phase of the trial where the trial court admitted testimony from an informant about another homicide the informant said the defendant admitted to while in custody. *Id.* at 285. The appellate court took issue with the fact that the jury heard informant testimony about *past* homicidal conduct that was unproven. *Id.* The court noted that "past criminal conduct is even more damaging in a penalty hearing than it is in a guilt-determining proceeding because the past conduct goes to the substance of whether the murder should or should not be punished by death." *Id.* The court stated that for such evidence to be admitted in the death penalty phase of the trial, the judge must first determine whether the details of the admissions supply sufficient indicia of reliability *or* there is some credible evidence other than the admission

8

itself to justify the conclusion that the convict committed the crimes which are the subject of the admission. *Id.* Not only is this case quickly distinguishable because it deals with the penalty phase of a death penalty trial, but it also has to do with the defendant's past criminal conduct and not the charged criminal conduct. But perhaps most importantly, it is a state case. Some states allow for pretrial mechanisms to test the witnesses, such as hearings or discovery depositions. No such mechanisms are approved for the use in federal court.

In federal court, pretrial depositions of witnesses are only available in limited circumstances, as governed by Federal Rule of Criminal Procedure 15(a).

> "In General. A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice.

"To establish exceptional circumstances under Rule 15(e), the moving party must show the witness's unavailability and the materiality of the witness's testimony." *United States v. Cannon*, 475 F.3d 1013, 1022 (8th Cir. 2007)(internal quotations omitted). Depositions may not be taken for discovery purposes, but only to preserve evidence. *United States v. Adcock*, 558 F.2d 397, 406 (8th Cir. 1977). Here the defendant wants to engage in a deposition of government witnesses under the guise of a pretrial veracity hearing, and even so, has failed to offer the court a proper basis to do so under Rule 15(e). While the defendant fails to even make a showing for exceptional circumstances which call for a deposition, the defendant in fact moves the court for much more than a deposition. The defendant wants a pretrial hearing where the court determines the veracity of the witnesses and excludes their testimony altogether.

The defendant concludes by citing a U.S. Supreme Court case, *United States v. Agurs,* 427 U.S. 97 (1976), in support of the proposition that "because allegations of potential perjury

9

have already surfaced, it is in the best interest of this Court and the government to ensure that the testimony of these informants is reliable before presenting them to the jury." (Def. Mot. p. 13). But the *Agurs* opinion does not stand for or include any such proposition. Rather, the *Agurs* case had to do with the prosecutor's failure to disclose the homicide victim's violent criminal record when the defendant claimed that she engaged in self defense when she killed him. *Id.* at 101. The defendant argued that the victim's prior criminal record would have evidenced his violent character. *Id.* The state appellate court reversed the trial court's denial for a new trial. But, the U.S. Supreme Court supported the trial court's decision and reversed the state appellate court. Nowhere in the *Agurs* opinion is there support for the defendant's contention that the trial court should hold a pretrial hearing to ensure that the testimony of informants is reliability before presenting them to the jury.

In the case before the court now, the government has not offered any type of benefit to the witnesses which the defendant calls into question. Not only does this include not offering some type of compensation, but also not offering any type of credit towards their sentences. This is true because some of the witnesses do not need it or want it and will testify without a benefit at this time. If the situation changes and the government does offer some type of benefit to any of the witnesses, then such information will appropriately be turned over in discovery. Defendant Cook can then use this information, within the limits set by the District Court, to cross-examine the witnesses about a possible credibility issue that such a benefit creates.

WHEREFORE, because there is no legal support for the exclusion of witness testimony or a pretrial hearing to test a witness's veracity (even in the case where an incentive is provided), the United States respectfully requests that the Court deny the defendant's motion without a hearing.

Respectfully submitted,

Beth Phillips
United States Attorney

By  */s/ Paul S. Becker*

Paul S. Becker
Assistant United States Attorney
Chief, Violent Crimes Strike Force Unit

*/s/ Cynthia L. Cordes*

Cynthia L. Cordes
Assistant United States Attorney
Human Trafficking Coordinator

*/s/ Cynthia L. Cordes for*

John Cowles
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122

CLC/lm

11

CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a copy of the foregoing was delivered on August 9, 2011 to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

       Carter Collins Law
       Law & Schriener LLC
       141 N Meramec Ave., Ste 314
       St. Louis, MO 63105-3750

       Lance David Sandage
       The Sandage Law Firm, PC
       117 West 20th Street, Suite 201
       Kansas City, MO 64108

       */s/ Cynthia L. Cordes*

       Cynthia L. Cordes
       Assistant United States Attorney