IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-00244-02-CR-W-DW |
| | ) | |
| BRADLEY COOK, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT COOK'S MOTION TO RECONSIDER PROTECTIVE ORDER**

COMES NOW the United States of America, by its United States Attorney, Tammy Dickinson, and by undersigned Assistant United States Attorneys, for the Western District of Missouri, and responds in opposition to Defendant Bradley Cook's Motion to Reconsider the Protective Order [Doc. 400]. In support of its opposition, the government offers the following:

**I.   INTRODUCTION**

On January 29, 2013, the United States filed a motion for a protective order for the government's discovery. [Doc. 398]. As stated in the motion, the government consulted with counsel for all defendants in the case regarding the terms of the proposed protective order well in advance of filing its motion. Counsel for the other defendants did not have any objection to the proposed terms for the protective order. However, it took numerous emails and phone calls to even obtain a response from counsel for Defendant Cook. During the course of these communications, the government clearly informed counsel of the proposed terms in writing, including that the proposed order would include a term requiring the return and destruction of the

defendant's copies of the government's discovery after any appeal. When a response was finally received by counsel for Defendant Cook, local counsel for the defendant first responded that there was no objection to the proposed order, before lead counsel, Carter Law, stated that they took no position, which the government reflected in its motion. At no time did counsel for the defendant request to see a copy of the proposed order.

On February 1, 2013, the court granted the government's motion and issued a protective order for the government's discovery. [Doc. 399].

On February 6, 2013, Defendant Bradley Cook filed a motion for the court to reconsider the terms of the proposed protective order. [Doc 400]. Although not altogether clear, Defendant Bradley Cook's main contention with the Court's Order now appears to be the term directing him to return copies of the government's discovery that he produced.[1]

## II. ARGUMENT

### A. The Court Should Not Dissolve Its Order

The defendant's motion asks the Court to dissolve its Order. For the reasons set forth in the government's original motion [Doc. 398], incorporated herein, and below, the Court should deny the defendant's motion.

#### 1. The Court Had Statutory Authority to Issue the Protective Order

The Court's Protective Order is supported by the plain text of Rule 16(d) of the Federal Rules of Criminal Procedure and the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, as well as the egregious facts of this case and graphic and private nature of the government's

---

[1]The Defendant states that he "has no objection to returning any discovery materials provided by the government," [Def. Mot. p. 2], while later arguing that copies of the government's discovery should not be returned. [Def. Mot. p. 3].

2

Case 4:10-cr-00244-BCW   Document 403   Filed 03/04/13   Page 2 of 11

discovery. Protective orders are routinely filed across the country in similar cases involving violent crime and human trafficking and often require the return and destruction of the government's discovery in the defendant's possession to protect the victims's rights under the law.[2] The Court certainly had the statutory authority to issue the Order, and the government is not aware of – nor does the defendant cite to – any case law to the contrary that would require the Court to dissolve the Order.

      2.    **The Court's Order will Not Result in the Destruction of Attorney Work Product**

Despite previous opportunities to object to the terms of the government's proposed order, which the Court adopted, the defendant now makes the claim that he cannot comply with the Court's Order "because it would necessarily require revealing attorney work product to the government and/or the destruction of work product and the client file compiled during the trial preparation of this case." Def. Mot. p. 2. However, he fails to explain how returning the government's discovery would reveal or destroy any attorney work product, other than to mention without further elaboration that "the defense has integrated and/or renamed its copies of much of [sic] government's discovery in the course of preparing for ease of document handling at trial." Def. Mot. p. 3. There is no reason why the defendant cannot remove such integrated copies and return them so that they can be destroyed, and it is unclear from the defendant's motion how renaming documents could reveal any legitimate attorney work product.

---

[2]The government is able to provide examples of such orders should the Court wish to review them.

### 3. The Court's Order will Not Result in the Destruction of the Client's File

Moreover, contrary to the defendant's assertion, the Court's Order will not result in the destruction of his client file nor does it implicate Mo. Sup. Cr. R. 4-1.15(m) ("Safekeeping Property"). The Order simply requires the return of the government's discovery, which is part of the government's file. The government could have withheld copies at the onset of the case either by protective order or by simply making the discovery available for review at the U.S. Attorney's Office and not providing defense counsel courtesy copies. When the government provides a copy of its discovery file to defense counsel for his or her convenience, the government does not surrender ownership of it, nor does such an act waive any of the victim's rights under the CVRA. To be clear, the government will maintain the original discovery in its file for thirty (30) years should the need arise for the defendant's counsel to review any of it at a later date. Thus, the victims' statutory rights and counsel's ability to review the government's discovery in the future outweigh any interest the defendant may have in his counsel maintaining a copy of it.

While the defendant cites to Rule 4-1.15(m) as creating a "legitimate" interest in his counsel maintaining a copy of the government's discovery, he offers no legal authority or opinion from the Missouri Bar to that effect. According to the defendant, counsel for the defendant has now integrated the government's discovery into her file, and therefore cannot return it to the government because Rule 4-1.15(m) requires that a lawyer securely store a client's file for 10 years after the competition or termination of the representation absent other arrangements between the lawyer and client.

4

As a result of the defendant's motion, the government contacted the Missouri Bar Ethics Legal Counsel about the defendant's claim that his counsel would violate Rule 4-1.15(m) by returning the government's discovery pursuant to the current protective order. The Missouri Bar Ethics Legal Counsel disagreed with the defendant's reliance on Rule 4-1.15 as a basis for refusing to return the government's discovery and advised that a court protective order requiring the return of the government's discovery would trump Rule 4-1.15(m) in all instances, relieving an attorney of any duty under the rule in which the court order applied (in this case, the government's discovery only).

More specifically, in a case where counsel were given the opportunity to state their position on the proposed protective order and an attorney elects to take "no position" on the terms, as was the case here, the Missouri Bar Ethics Legal Counsel stated that, in fact, taking "no position" is a position and Rule 4-1.15(m) presupposes that the attorney consulted with the client in advance. Therefore, according to the Missouri Bar Ethics Legal Counsel, the protective order issued after counsel took "no position" also constitutes another "arrangement between the lawyer and client" under Rule 4-1.15.

Further, the Missouri Bar Ethics Legal Counsel also advised that when an attorney accepts copies of the government's discovery under a discovery agreement with the government, as was done in this case, that discovery agreement also constitutes another "arrangement between the lawyer and client" under the rule and relieves the attorney of her obligations under the rule. The mentioned purpose of Rule 4-1.15's requirement for attorneys to retain their file is to make it available to the client if the client "requests the file within 10 years after the completion or termination of the representation..." However, as stated above, in this case, the original

5

discovery agreement between counsel and the government prohibits counsel from disseminating the file to the defendant. If Defendant Cook's counsel were to provide the defendant with a copy of the government's discovery in this case—either before or after counsel's termination of representation—counsel would be in direct violation of the government's discovery agreement. Thus, the defendant's "other arrangement"—the discovery agreement— with the government defeats the purpose of Rule 4-1.15's requirement to retain the discovery anyway.

Finally, there have been instances where clients have attempted to argue under Rule 4-1.15(m) that they were not made aware of a proposed court order or discovery agreement and have claimed that their counsel should have maintained their file for 10 years because they did not agree to "another arrangement." The Missouri Bar Ethics Legal Counsel advised that the defendants consistently lose when pursuing this argument based on the fact the rule presupposes that the consultation took place, regardless of whether it happened or not.

For all of these reasons, Rule 4-1.15(m) is not a basis for the defendant's counsel to retain the government's discovery in this case and the Court should not dissolve its Order on that ground.

4. **The Original Discovery Agreement is Not Sufficient to Protect the Victim**

While the defendant believes that the existing discovery agreement with the U.S. Attorney's Office is sufficient to protect the victims' statutory rights, the government respectfully disagrees, as the defendant's counsel previously failed to adhere to this agreement. In the course of the case, counsel for Defendant Cook disseminated the government's discovery to the defendant in a custodial facility, despite repeated warnings from the government of the discovery agreement terms. As a result, in August 2011, the government provided formal notice

to the defendant's counsel and the magistrate court that counsel could only review any future discovery at the U.S. Attorney's Office and that the government would no longer be providing courtesy copies to counsel. Furthermore, as explained in the government's original motion [Doc. 398], the discovery agreement did not require the return or destruction of the government's discovery in counsel's possession, which is necessary in this case given the egregious facts and graphic and private nature of the discovery. The only way to guarantee that the government's discovery is not improperly disclosed, and thereby guaranteeing the victim her rights under the law, is to require the defendant to return the government's discovery and any copies for destruction.

### B.  The Court Should Not Amend Its Order

The defendant argues in the alterative that the Court should amend its Order because it is both overly broad and too restrictive. He offers several purported examples, each of which the Court should reject.

#### 1.  The Protective Order Should Apply to All of the Government's Discovery

First, the Order should continue to apply to all of the government's discovery. The defendant incorrectly claims that "witness statements, recorded phone calls, letters, search warrant documentation and photos, and subpoenas" do not involve the victim or implicate her dignity and privacy. Def. Mot. p. 4. With the exception of a limited number of recorded phones calls in which the defendant does not discuss the victim, this evidence *does* involve the victim and implicates her dignity and privacy. The witness statements discuss the victim and the defendants' tortuous and sexual abuse of the victim; the search warrant documentation and photos depict crime scenes where much of the torture and sexual abuse occurred, and the

7

evidence seized during the searches include the actual devices and items used to torture and abuse her. Furthermore, to the extent that any nominal part of the discovery does not specifically pertain to the victim, it would be incredibly difficult to locate, since the focus of the entire investigation was on the violent crimes committed against the victim. If there are certain items that the defendant believes do not implicate the victim's rights, he should identify them with specificity for the Court to consider, rather than make the blanket statement that not all of the discovery implicates the victim's privacy and dignity.

## 2. The Protective Order Is Not Ambiguous

Second, the defendant takes issue with the language – as he represents it to be – "only to the extent necessary to provide a defense in this case." Def. Mot. p. 4-5. In fact, the complete language reads "only to the extent necessary to provide a defense in this case, *including any direct appeal*." This language is not ambiguous and clearly applies to any appeal, so the defendant's concern that he can not have conversations about appellate issues or retaining the discovery for purposes of appeal is unfounded.[3] Moreover, the defendant's confinement conditions certainly are relevant to providing a defense, although it is unclear why the defense team would need to look at the discovery to address this issue.

---

[3]While the defendant notes that he maintained his right to appeal a district court's ruling on his motion to dismiss Count Two, the Eighth Circuit recently issued an opinion addressing his motion on point, which is *not* in the defendant's favor. *See United States v. Jungers*, 702 F.3d 1066 (8th Cir. 2013).

### 3. The Protective Order Should Not Extend to Include Collateral Proceedings

Finally, the Court should not amend the Order to apply to any collateral proceedings. Again, the Court's Order does not require the destruction of any attorney work product, and as in all cases, the government will maintain a copy of the original discovery for a period of thirty (30) years and make it available, if and when, new counsel of record chooses to pursue an ineffective assistance of counsel claim.

### 4. The Defendant's Alternative Order Was Never Provided to the Government

The defendant claims that he "provided his own proposed order." Def. Mot. p.5. The government is not aware of any proposed order provided by the defendant. If one exists, the defendant never provided a copy to the government.

C. **<u>Conclusion</u>**

WHEREFORE, because the defendant was already given ample time to convey an objections or contributions to the protective order discussed with all parties in the case and because he otherwise does not provide a reasonable basis for the terms of the protective order to be revisited or rewritten now and there are no objections by any other defendant in the case, the government requests the Court deny the defendant's motion for reconsideration of the Court's Order.

        Respectfully submitted,

        Tammy Dickinson
        United States Attorney

By   */s/ Paul S. Becker*
        ―――――――――――――――――
        Paul S. Becker
        Assistant United States Attorney
        Chief, Violent Crimes Strike Force Unit

        */s/ Cynthia L. Cordes*
        ―――――――――――――――――
        Cynthia L. Cordes
        Assistant United States Attorney
        Human Trafficking Coordinator

        */s/ Cynthia L. Cordes for*
        ―――――――――――――――――
        John Cowles
        Assistant United States Attorney

        Charles Evans Whittaker Courthouse
        400 East Ninth Street, Suite 5510
        Kansas City, Missouri 64106
        Telephone: (816) 426-3122

CLC:lm

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that a copy of the foregoing was delivered on March 4, 2013, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

                 */s/ Cynthia L. Cordes*
                 _____
                 Cynthia L. Cordes
                 Assistant United States Attorney