IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )
                                    )
        v.                          )  Criminal Action No.
                                    )  10-00244-02-CR-W-DW
BRADLEY COOK,                       )
                                    )
                Defendant.          )

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION
TO DISMISS COUNT TWO AS UNCONSTITUTIONALLY VAGUE**

Before the court is defendant's motion to dismiss count two
of the indictment as unconstitutionally vague (document number
117).  Defendant argues that count two fails to provide fair
warning to a criminal defendant and promotes arbitrary
enforcement in violation of the Due Process Clause of the Fifth
Amendment.  I find that 18 U.S.C. § 1591, as applied to
defendant, provides adequate warning that defendant's conduct was
prohibited by the statute, and it does not encourage arbitrary
and discriminatory enforcement.  Therefore, defendant's motion to
dismiss should be denied.

*I.   BACKGROUND*

On September 8, 2010, an indictment was returned charging
defendant with conspiracy to commit sex trafficking by force,
fraud, or coercion and to use an interstate facility to promote
an unlawful activity, in violation of 18 U.S.C. § 371; sex
trafficking by force, fraud or coercion, in violation of 18
U.S.C. §§ 1591 and 1594; possession of firearms and ammunition by

a drug user, in violation of 18 U.S.C. § 922(g)(3); and using an interstate facility to facilitate an unlawful activity, in violation of 18 U.S.C. § 1952(a).

A superseding indictment was returned on March 30, 2011, charging the conspiracy, sex trafficking, and use of an interstate facility to facilitate unlawful activity; however, the superseding indictment did not include the gun count and added the following:  Tampering with a victim, in violation of 18 U.S.C. § 1512(a)(1)(A); use of an interstate facility in the commission of murder for hire, in violation of 18 U.S.C. § 1958; attempted witness retaliation, in violation of 18 U.S.C. § 1513(a)(1); and attempted tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1).

Defendant filed myriad pretrial motions, one of which was the instant motion to dismiss count two as unconstitutionally vague.  Defendant subsequently pled guilty to count two reserving the right to appeal any denial of his motion to dismiss that count as unconstitutionally vague.  The government agreed to drop the remaining counts at sentencing.

Count two reads as follows:

COUNT TWO
(Sex Trafficking by Force, Fraud or Coercion)
The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs A through D of Count One of this indictment.
Between on or about February 10, 2004, continuing through on or about February 27, 2009, in the Western

2

District of Missouri and elsewhere, EDWARD BAGLEY, BRADLEY COOK, MICHAEL STOKES, and MARILYN BAGLEY, defendants herein, aiding and abetting one another and others, knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means, a person, namely FV, and benefitted financially and by receiving something of value from participation in a venture engaged in recruiting, enticing, harboring, transporting, providing, and obtaining FV, knowing that force, fraud, and coercion would be used to cause FV to engage in a commercial sex act; and attempted to do so.

All in violation of Title 18, United States Code, Sections 1591(a), 1594, and 2.

The paragraphs from count one which are incorporated by reference read as follows:

A.    Introduction

At all times relevant to this Indictment:

1.    Defendants EDWARD BAGLEY, a/k/a "Master Ed," MICHAEL STOKES, a/k/a "The Rodent," and MARILYN BAGLEY, and Dennis Henry and James Noel were residents of the Western District of Missouri. Defendant BRADLEY COOK, a/k/a "PutHer2GoodUse," was a resident of the Eastern District of Missouri.

2.    Unless otherwise specified herein, Defendants EDWARD BAGLEY, a/k/a "Master Ed," BRADLEY COOK, a/k/a "PutHerToGoodUse," MICHAEL STOKES, a/k/a "The Rodent," and MARILYN BAGLEY, and Dennis Henry and James Noel engaged in the alleged conduct herein in the Western District of Missouri.

3.    A female born in February 1986, was the victim of the crimes alleged herein.  Female Victim, hereafter "FV," was a resident of the Western District of Missouri.

B.    Object of the Conspiracy

Between on or about December 2002, to and including February 27, 2009, within the Western District of Missouri, and elsewhere, Defendants EDWARD BAGLEY, BRADLEY COOK, MICHAEL STOKES, and MARILYN BAGLEY, and Dennis Henry and James Noel, and others known and unknown to the Grand Jury, conspired and agreed with each other to:

(a)    recruit, entice, harbor, transport, provide, and obtain FV and benefitted financially and by receiving something of value from participation in a venture which engaged in an act of recruiting, enticing, harboring,

transporting, providing, and obtaining FV, knowing that force, fraud, and coercion, and any combination of such means, would be used to cause FV to engage in a commercial sex act; and did so in and affecting interstate commerce; all in violation of Title 18, United State Code, Sections 1591(a) and (b)(1);

(b)  use a facility of interstate commerce to promote, establish, carry on, and facilitate the promotion, establishment, and carrying on, of unlawful activity; all in violation of Title 18, United States Code, Section 1952(a)(3).

C.   Manner and Means By Which the Object of the Conspiracy was to be Accomplished

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Defendants EDWARD BAGLEY and MARILYN BAGLEY recruited and enticed a minor female, FV, who they believed suffered from mental deficiencies and came from a troubled childhood, into their trailer home in a wooded area within the Western District of Missouri.

2.   Defendants EDWARD BAGLEY and MARILYN BAGLEY engaged in sexual intercourse and sexual torture activities with FV to groom and coerce her to become a "sex slave."

3.   Defendant EDWARD BAGLEY beat, whipped, flogged, suffocated, choked, electrocuted, caned, skewered, drowned, mutilated, hung, and caged FV to groom and coerce her to become a "sex slave."

4.   Defendant EDWARD BAGLEY advertised and publicized FV over the internet and in live web cam sessions as his slave who would engage in sexual acts and could be tortured during live online sessions, or in person.

5.   Defendants BRADLEY COOK and MICHAEL STOKES, and Dennis Henry and James Noel communicated with Defendant EDWARD BAGLEY on the internet and the telephone regarding BAGLEY's use of FV and the sexual acts he could have her perform for them as his slave.

6.   Defendants BRADLEY COOK, MICHAEL STOKES and Dennis Henry and James Noel provided Defendant EDWARD BAGLEY with benefits and things of value including, but not limited to, cash, cigarettes, computer hard drives, sadomasochism videos, coats, and meat.

7.   Defendant EDWARD BAGLEY accepted the benefits and things of value and coerced FV to engage in sexual acts and torture sessions with Defendants BRADLEY COOK, MICHAEL STOKES, and Dennis Henry and James Noel.

8.    Defendants BRADLEY COOK and MICHAEL STOKES, and
Dennis Henry and James Noel engaged in sexual acts with FV,
including sexual torture, including, but not limited to,
flogging, whipping, shocking, choking, piercing, skewering,
sewing, stapling, and electrocuting.

D.   Overt Acts
     In furtherance of the conspiracy and to accomplish the
object of the conspiracy, Defendants EDWARD BAGLEY, BRADLEY
COOK, MICHAEL STOKES, MARILYN BAGLEY, and Dennis Henry and
James Noel, and others known and unknown to the Grand Jury,
committed various overt acts within the Western District of
Missouri and elsewhere, including, but not limited to the
following:
     1.   In or about December 2002, Defendants EDWARD
BAGLEY and MARILYN BAGLEY invited FV, a 16-year-old minor,
who grew up in foster care homes, into their residence after
she ran away from home and promised her "a great life,"
including but not limited to, making her a model and a
dancer, and making her "dreams come true."
     2.   In or about February 2003, Defendants EDWARD
BAGLEY and MARILYN BAGLEY gave FV her own bedroom, dresser,
and television, and provided her with clothes and food to
entice her to stay in their trailer home.
     3.   Between on or about December 2002, to and
including December 6, 2004, Defendant MARILYN BAGLEY modeled
"slave clothes" as a part of recruiting FV to become
Defendant EDWARD BAGLEY's slave.
     4.   Between on or about December 2002, to and
including February 27, 2009, Defendants EDWARD BAGLEY and
MARILYN BAGLEY used the internet and adult BDSM pornography
to train and groom FV to become a sex slave.
     5.   Between on or about December 2002, to and
including February 2004, Defendant EDWARD BAGLEY had sexual
intercourse with FV while she was still a minor.
     6.   Between on or about December 2002, to and
including February 2004, Defendants EDWARD BAGLEY and
MARILYN BAGLEY showed FV, while she was still a minor,
images of pornography and sadomasochism activities on the
internet, his computer, and television.
     7.   On or about February 10, 2004, Defendant EDWARD
BAGLEY had FV sign a "sex slavery contract" and related
home-made documents, shortly after her 18th birthday and
instructed FV that the contract legally bound her to him as
his "sex slave," with a term that "never" ended.
     8.   Between on or about February 10, 2004, to and
including December 27, 2005, Defendant EDWARD BAGLEY sewed

FV's urinary opening and vagina shut to show her what was "expected of her."

9.  Between on or about February 10, 2004, to and including February 2005, Defendant EDWARD BAGLEY had FV tattooed to mark her as his property, which included a tattoo of:

(1)  a bar code on FV's neck;

(2)  a tribal tattoo on her back with the letter "S" to mark her as a slave; and (3)  the Chinese symbol for slave on her ankle.

10.  Between on or about December 2002, to and including February 27, 2009, Defendant EDWARD BAGLEY gave FV marijuana and ecstasy, Schedule I controlled substances.

11.  Between on or about February 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY engaged in oral, vaginal, and anal sex with FV.

12.  On or before August 19, 2004, Defendant MARILYN BAGLEY posed in photographs taken by Defendant EDWARD BAGLEY where she sexually tortured FV, including, but not limited to, full vaginal penetration with her fist.

13.  On or before June 6, 2005, Defendants EDWARD BAGLEY and MARILYN BAGLEY sent a text message on the internet stating he "whored out" FV.

14.  On or about December 9, 2006, FV called Defendant MARILYN BAGLEY from California and told Marilyn Bagley that she was afraid of Ed Bagley using the crank phone on her for the photo shoot. Defendant MARILYN BAGLEY indicated to FV she did not have a choice and not to upset Defendant EDWARD BAGLEY.

15.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY performed the following sexual acts, mutilation, and torture, any one of which constitute an overt act, including, but not limited to, the following:

a.  Defendant EDWARD BAGLEY sewed FV's vaginal opening with a needle and thread.

b.  Defendant EDWARD BAGLEY skewered through FV's flesh on her pubic region, pierced FV's vaginal opening and tacked open her labia.

c.  Defendant EDWARD BAGLEY punctured through FV's nipples with multiple metal needles.

d.  Defendant EDWARD BAGLEY hooded, roped down, and pierced through FV's nipples with hooks and stretched her breasts into the air.

e.  Defendant EDWARD BAGLEY whipped FV's body, breasts, genitalia, and anus with paddles, canes, and floggers.

f.     Defendant EDWARD BAGLEY tied up FV's breasts, cutting off blood flow and circulation to escalate sensitivity, and slapped her breasts with metal devices.

g.     Defendant EDWARD BAGLEY tied up FV's breasts, cutting off blood flow and circulation to escalate sensitivity, and pierced her breasts with needles.

h.     Defendant EDWARD BAGLEY tied FV down, duct taped her mouth, and cut through her breast with a long metal skewer.

i.     Defendant EDWARD BAGLEY gagged FV and tied her body and neck up with rope, cutting off oxygen.

j.     Defendant EDWARD BAGLEY tied FV's limbs behind her body and left her hanging, suspended in the air, or on a bench for long period's [sic] of time.

k.     Defendant EDWARD BAGLEY gagged FV, tied her limbs stretched open, and suctioned her breasts and vaginal labia with suction devices.

l.     Defendant EDWARD BAGLEY chained FV's body down or to the wall and blindfolded and hooded her.

m.     Defendant EDWARD BAGLEY gagged and blindfolded FV naked, chained up FV, and stretched her limbs in opposing directions.

n.     Defendant EDWARD BAGLEY gagged FV, tied her hands behind her back, and nailed FV's nipples to slabs of wood.

o.     Defendant EDWARD BAGLEY bound and tied FV naked to a wooden pony or wooden horse with an appendage inserted into her vaginal or anal opening.

p.     Defendant EDWARD BAGLEY strapped FV down for hours at a time on a home-made device consisting of a plastic toolbox with a motor and piston inside connected to a metal arm with a dildo attached.

q.     Defendant EDWARD BAGLEY locked, chained and hooded FV naked in a dog cage, often suspending the cage in the air or attaching FV's sex organs to electrical devices while she was trapped in the cage.

r.     Defendant EDWARD BAGLEY electrocuted FV with crank phones by generating high levels of electric voltage into FV through her toes, labia, nipples, vagina, and anus.

s.     Defendant EDWARD BAGLEY inserted a catheter into FV's urethra and clamped the cord to prevent urination for extended periods of time.

t.     Defendant EDWARD BAGLEY inserted a plug into FV's anus which he used to electrocute her and force water into her rectum.

u.   Defendant EDWARD BAGLEY performed "waterboarding" on FV by forcing her head underwater or pouring water on her face for extended periods of time.

v.   Defendant EDWARD BAGLEY suffocated FV to unconsciousness with ropes and plastic bags.

16.   Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY escalated, increased, and extended the torture outlined in Paragraphs 15(a) – (v) above, that he executed upon FV as a form of punishment if FV attempted to stop the activity, cried for help, or did not otherwise cooperate during the course of the torture.

17.   Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY refused FV necessary medical care and provided FV animal antibiotics for infections and illness.

18.   Between on or about January 2004, to and including June 2007, Defendant MARILYN BAGLEY warned FV to "do as she was told" or should would see "Violent Ed."

19.   Between on or about February 10, 2004, to and including February 27, 2009, Defendant MARILYN BAGLEY refused to offer FV assistance when FV expressed fear of Defendant EDWARD BAGLEY.

20.   Between on or about February 2003, to and including February 27, 2009, Defendants EDWARD BAGLEY and MARILYN BAGLEY took and held FV's government identification documents, including, but not limited to, FV's birth certificate and social security card.

21.   Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY tortured FV on live web cam over the internet.

22.   Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY threatened and exhibited his ability to kill FV by maintaining numerous guns in the home.

23.   Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY threatened and exhibited his ability to kill FV by shooting animals she cared for in front of her, and bragging about the bodies he had already buried in the woods behind the trailer home.

24.   On or about February 8, 2009, Defendant EDWARD BAGLEY, while intoxicated, transported FV from a strip club with a loaded firearm in his vehicle.

25.   Between on or about October 2008, to and including February 27, 2009, Defendant EDWARD BAGLEY threatened to bury FV alive and showed her a video demonstrating how he

intended to do it.

26.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY ignored FV's pleas to stop abusing her, would not allow her to use a "safe word," or ignored her "safe word" when she attempted to use it during the sex/torture sessions that he performed with her alone, and those witnessed in and participated in by Defendants MICHAEL STOKES and BRADLEY COOK and Dennis Henry and James Noel.

27.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY performed "abortions" on FV using specula, vacuums, and clothing hangers for the purpose of terminating possible pregnancies.

28.  Between on or about February 10, 2004, to and including February 27, 2009, Defendants MICHAEL STOKES and BRADLEY COOK and Dennis Henry and James Noel communicated with Defendant EDWARD BAGLEY on the internet and/or the telephone regarding sexual and torture activities involving FV.

29.  In or about 2004, Defendant EDWARD BAGLEY invited Dennis Henry to his trailer residence and presented FV to Dennis Henry as his slave.

30.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY provided FV to Dennis Henry to allow Dennis Henry to torture her, including but not limited to, allowing him to tie FV up, strap her to a wooden pony, and whip her with floggers and leather straps.

31.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY, after torturing FV, would have her clean up the mess and clean the sexual toys and devices used on her because that was "her responsibility" as a slave.

32.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY provided FV to Dennis Henry to have him engage in oral and vaginal sex with her.

33.  Between on or about March 2007, to and including February 27, 2009, Defendant EDWARD BAGLEY provided FV to Dennis Henry for him to have anal sex with FV so he could "get her used to" having anal sex with other men.

34.  In or about December 2006, Defendant EDWARD BAGLEY and Dennis Henry transported FV from Missouri to California with the intent that FV perform sexual acts during a photo shoot.

35.  In or about December 2006, Defendant EDWARD BAGLEY accepted approximately $1,400 from Dennis Henry for FV to engage in sex acts during a pornographic photo shoot in California.

36.  In or about March 2007, Defendant EDWARD BAGLEY accepted an additional $500 from Defendant Dennis Henry for further transportation of FV from Missouri to California.

37.  Between on or about, February 10, 2004, to and including October 2008, Defendant BRADLEY COOK watched Defendant EDWARD BAGLEY stream live video over the internet of FV being sexually abused and tortured, including, but not limited to, being whipped through the bars of a cage.

38.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant BRADLEY COOK downloaded pictures of FV distributed by Defendant EDWARD BAGLEY to his computer and saved them.

39.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant BRADLEY COOK sent images to Defendant EDWARD BAGLEY of females in his residence that he beat, bound and tied up to share ideas with Defendant BAGLEY of how to abuse FV.

40.  Between on or about January 2006, to and including, October 2008, Defendant BRADLEY COOK visited Defendant EDWARD BAGLEY's residence and smoked marijuana with Defendant EDWARD BAGLEY and FV.

41.  Between on or about January 2006, to and including, October 2008, Defendant BRADLEY COOK traveled to Defendant EDWARD BAGLEY's residence and observed Defendant BAGLEY have FV perform sexual acts for Defendant COOK.

42.  Between on or about January 2006, to and including, October 2008, Defendant BRADLEY COOK traveled to Defendant EDWARD BAGLEY's residence and had FV perform oral sex on him.

43.  Between on or about January 2006, to and including October 2008, Defendant BRADLEY COOK engaged in vaginal, anal, and oral sex with FV.

44.  Between on or about January 2006, to and including October 2008, Defendant BRADLEY COOK gave Defendant EDWARD BAGLEY a hard drive with sadomasochism and torture videos downloaded from the internet, including videos showing how to bury someone alive.

45.  Between on or about January 2006, to and including October 2008, Defendant EDWARD BAGLEY whipped FV for Defendant BRADLEY COOK while FV was chained up.

46.  Between on or about January 2006, to and including October 2008, Defendant BRADLEY COOK, sexually abused females in his own residence and shared those torture

methods with Defendant EDWARD BAGLEY for him to apply to FV [-- a]ny one of which constitutes an overt act, including, but not limited to the following:

    a.   tied up FV's breasts with rope, cutting off her blood flow, and then slapped the sensitized area with a paddle or his hand;

    b.   tied up FV and then applied wooden spring clothes pins to her body;

    c.   tied up FV and placed a ball gag and rings in her mouth;

    d.   tied up FV naked, laying [sic] down, and poured water on her face to "waterboard" her.

47.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant MICHAEL STOKES traveled to Defendant EDWARD BAGLEY's residence and engaged in the following acts, any one of which constitutes an overt act, including, but not limited to the following:

    a.   flogged and whipped FV's body;

    b.   shocked FV's vaginal opening with an electrical device;

    c.   tortured FV with a sensory deprivation device;

    d.   watched Defendant EDWARD BAGLEY torture FV with a crank phone;

    e.   watched Defendant EDWARD BAGLEY electrocute FV while she was confined in a dog cage.

48.  Between on or about June 2006, to and including February 27, 2008, Defendant MICHAEL STOKES engaged in oral and vaginal sex with FV.

49.  On or about 2006, Defendant MICHAEL STOKES offered FV to James Noel and another known person to the Grand Jury for sex acts and transported James Noel to Defendant EDWARD BAGLEY's residence.

50.  In or about December 2006, Defendant MICHAEL STOKES gave Defendant EDWARD BAGLEY $1,000 to transport FV to California for a pornographic photo shoot where FV would engage in sex acts.

51.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant MICHAEL STOKES gave Defendant EDWARD BAGLEY steaks, cigarettes, coats, clothing, lighters, and cash.

52.  In or about March 2005, Defendant MICHAEL STOKES gave Defendant EDWARD BAGLEY $300 to build a home-made device to torture FV, which was made up of a black plastic toolbox with a motor and piston inside connected to a metal arm with a dildo attached.

53.  Between on or about 2006, to and including February 27, 2009, Defendant EDWARD BAGLEY hooked FV to an electrical device that was connected to a dildo for Defendant MICHAEL STOKES and James Noel's to watch.

54.  Between on or about 2006, to and including February 27, 2009, Defendant EDWARD BAGLEY tortured FV for James Noel with a crank phone, electrical devices, a violet wand and floggers.

55.  Between on or about December 2006, to and including March 2007, Defendant EDWARD BAGLEY accepted $300 from James Noel to watch and engage in torture activities with FV for several hours.

56.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant MARILYN BAGLEY accepted and utilized the benefits received from FV's sexual acts and dancing at the local adult entertainment clubs for herself, including, but not limited to, cigarettes, steaks, clothes, food, and cash.

57.  Between on or about June 2007, to and including February 27, 2009, Defendant EDWARD BAGLEY had FV work at an adult entertainment club as a dancer and stripper for his own financial benefit.

58.  On or about February 27, 2009, Defendant EDWARD BAGLEY suffocated and electrocuted FV during a torture session, which resulted in her cardiac arrest, emergency medical treatment, and hospitalization.

All in violation of Title 18, United States Code, Section 371.

## II.  VAGUENESS OF THE INDICTMENT

It is well established that an indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and (2) enables him to plead an acquittal or conviction in bar of future prosecutions.  Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. McMahan, 744 F.2d 647, 650 (8th Cir. 1984).  The sufficiency of the indictment is to be judged by practical, and not by technical, considerations.  Hayes v. United

States, 296 F.2d 657, 667 (8th Cir. 1961), cert. denied, 369 U.S. 867 (1962).  An indictment ordinarily is held sufficient unless it is so defective that by no reasonable construction can it be said to charge the offense for which the defendant was convicted. United States v. Young, 618 F.2d 1281, 1286 (8th Cir.), cert. denied, 449 U.S. 844 (1980); United States v. Ivers, 512 F.2d 121, 123 (8th Cir. 1975).

It is generally sufficient that the indictment sets forth the offense in the words of the statute itself, so long as those words fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.  Hamling v. United States, 418 U.S. at 117; United States v. McKnight, 799 F.2d 443, 445 (8th Cir. 1986); United States v. Opsta, 659 F.2d 848, 850 (8th Cir. 1981).  However, the indictment does not have to follow the exact wording of the statute.  United States v. Ivers, 512 F.2d at 123.

Title 18, United States Code, Section 1591 reads in relevant part as follows:

    (a)  Whoever knowingly –
        (1)  in or affecting interstate or foreign
    commerce...recruits, entices, harbors, transports, provides,
    obtains or maintains,[1] by any means a person; or

---

[1]The government points out that the December 23, 2008, amendment to 18 U.S.C. § 1591 added the word "maintains." However, because the defendant's conduct was both prior and subsequent to the amendment date, the government used the language in the older version of the statute but argues that

13

(2)   benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) knowing, . . . that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act . . . shall be punished as provided in subsection (b).

The term "coercion" is defined as (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process.   § 1591(e)(2). The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.   § 1591(e)(3).

The elements of 18 U.S.C. § 1591, as charged in count two of the indictment are:

    One, the defendant knowingly recruited, enticed, harbored, transported, provided, and obtained a person by any means;
or
    benefitted, financially or by receiving anything of value, from participation in a venture which engaged in an act that recruited, enticed, harbored, transported, provided, or obtained a person by any means;

    Two, the defendant knew that force, fraud, or coercion would be used to cause the person to engage in a commercial sex act; and

---

"[i]t is relevant here now, however, because it demonstrates Congress's ongoing efforts to broaden the application of § 1591."

Three, the conduct was in or affected interstate commerce.

Count two clearly tracks the language of 18 U.S.C. § 1591. The indictment alleges that defendant

- knowingly,

- in and affecting interstate and foreign commerce,

- recruited, enticed, harbored, transported, provided and obtained, or attempted to do so

- by any means

- a person, namely FV

- and benefitted financially and by receiving something of value

- from participation in a venture engaged in recruiting, enticing, harboring, transporting, providing and obtaining FV

- knowing the force, fraud, and coercion would be used

- to cause FV to engage in a commercial sex act.

In addition, count two, by incorporating count one, adds additional detail by setting forth dozens of actions each defendant is alleged to have taken.

"A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application" is void for vagueness. United States v. Washam, 312 F.3d 926, 929 (8th Cir. 2002) (internal citations omitted). "Void for vagueness simply means that criminal responsibility

15

should not attach where one could not reasonably understand that his contemplated conduct is proscribed." Id. (internal citations omitted); United States v. Ghane, 673 F.3d 771, 776 (8th Cir. 2012). "There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." United States v. Bamberg, 478 F.3d 934, 937 (8th Cir. 2007) (internal citations omitted); United States v. Clinton, 2012 WL 5195987 (D.S.D., October 19, 2012). It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. United States v. Mazurie, 419 U.S. 544, 550 (1975). The court must determine "whether [the] statute is vague as applied to the particular facts at issue,[2] for a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." United States v. Yielding, 657 F.3d 688, 715 (8th Cir. 2011) (citation omitted).

The government argues three theories in its response to defendant's motion: Defendant was a customer and customers fall

---

[2]A vagueness argument such as the one raised by defendant would typically be addressed after evidence is presented at trial. However, the parties entered into a conditional plea agreement which necessarily contemplates using the allegations in the indictment to determine the vagueness issue.

under 18 U.S.C. § 1591(a)(1), defendant participated in and benefitted from the venture under 18 U.S.C. § 1591(a)(2), and defendant attempted or aided and abetted the venture under 18 U.S.C. §§ 1595 and 2.  Sufficiency on any one of these theories is sufficient to meet a challenge for vagueness.  See generally United States v. Yielding, 657 F.3d at 715.  The defendant's motion argues only that customers do not fall under 18 U.S.C. § 1591 and that defendant did not receive anything of value.  He did not address the fact that he is also charged with aiding and abetting and attempt.

## 18 U.S.C. § 1591(a)(1) – Obtain by any means a person

The plain language of a statute can give adequate notice. United States v. Ghane, 673 F.3d 771, 778 (8th Cir. 2012).  Words in statutes are given their ordinary meaning unless a contrary meaning appears.  Batsell v. United States, 403 F.2d 395, 400 (8th Cir. 1969) (holding the word "induces" in the Mann Act has its common meaning).  Actual notice that a statute applies to the defendant's conduct is not required.  United States v. Carpenter, 422 F.3d 738, 746 (8th Cir. 2005).

In United States v. Ghane, 673 F.3d 771, 777 (8th Cir. 2012), the defendant, Hessam Ghane, was charged with knowingly stockpiling, retaining, and possessing a chemical weapon (potassium cyanide) which is a toxic chemical not intended by the defendant to be used for a peaceful purpose.  "Peaceful purposes"

was defined as "[a]ny peaceful purpose related to an industrial, agricultural, research, medical, or pharmaceutical activity or other activity." Id. (quoting 18 U.S.C. § 229F(7)(A)). Ghane told a physician's assistant examining him in the emergency room that he would use cyanide to commit suicide. In court, Ghane argued the terms "chemical weapon," "toxic chemical," and "peaceful purpose" were imprecisely defined in 18 U.S.C. §§ 229F(1)(A), (7)(A), and (8)(A) thus making the statute unconstitutionally vague. The Eighth Circuit held that the statute was not vague as applied to Ghane because the plain language of the statute gave ample notice, and a jury could reasonably conclude that suicide did not fall within the "common understanding" of peaceful purposes. United States v. Ghane, 673 F.3d at 777 and 779. "A person of ordinary intelligence could reasonably understand that stealing and possessing potassium cyanide (a highly dangerous and regulated substance) to effect a possible suicide might result in criminal culpability." Id. at 778.

Similarly, the ordinary meaning of the words in 18 U.S.C. § 1591 provide ample warning of criminal culpability as to the facts which are alleged in the superseding indictment. Section 1591 is part of the Traffickintg Violence and Protection Act ("TVPA"), an anti-slavery and human trafficking statute. 18 U.S.C. Ch. 77. The purpose of the TVPA is "to combat trafficking

18

in persons.  22 U.S.C. § 7101(a).  The TVPA notes that many victims of trafficking are forced into the international sex trade which involves the "sexual exploitation of persons, predominantly women and girls, involving activities related to prostitution, pornography, sex tourism, and other commercial sexual services."  22 U.S.C. § 7101(b)(2).

Section 1591 applies to whoever "knowingly . . . recruits, entices, harbors, transports, provides, or obtains by any means a person . . . knowing that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act. . . ."  The statute does not define the word "obtain."  The dictionary defines "obtains" as "to gain or attain usu. by planned action or effort."  Webster's Ninth New Collegiate Dictionary 816 (1990).  While, as defendant argues, verbs other than "obtain" may be used in prohibiting typical prostitution in order to prohibit the buying and selling of sex, here the statute's focus on the buying and selling of the person rather than the buying and selling of the sex requires the use of different verbs than would be used in a typical prostitution statute.  Section 1591 prohibits the buying (obtaining) or selling (providing) of a person knowing that force, fraud, or coercion will be used to cause the person to engage in a commercial sex act.

Defendant argues that he did not violate § 1591 because he is alleged to have obtained the victim for sex.  As the statute specifically seeks to combat human trafficking largely involving the "sexual exploitation of persons," it would be counter to the purpose of the statute to exclude from criminal culpability those who obtain a person for sex, knowing force or coercion was used to cause the victim to engage in the commercial sex act.  Further, a person of ordinary intelligence could reasonably understand that criminal culpability could result when the person obtains a woman for sexual acts, including sexual torture, while knowing a third person tortured her or threatened to torture her to force and coerce her into complying with the sexual acts.

The statute is sufficiently narrow to avoid arbitrary enforcement.  The statute requires the knowing acquisition of the victim with the knowledge that force, fraud or coercion will be used to cause the victim to engage in a commercial sex act.  This mens rea requirement prevents the statute's use in typical prostitution scenarios where the patron is unaware of the specifics of the prostitute's coercion.

Here the indictment alleges, among many other things, that defendant gave to Edward Bagley videos showing how someone could be buried alive, that Edward Bagley threatened to bury FV alive and showed her a video demonstrating how he intended to do it, that defendant had sex with FV and tortured her, and that FV was

not permitted to use safe words or safe words were ignored when she was being tortured by defendant.  These facts alone are sufficient to put defendant on notice that his alleged conduct is prohibited by 18 U.S.C. § 1591:  He is alleged to have knowingly obtained (sexually tortured and had sex with) a person (FV) knowing that force, fraud or coercion will be used (threatening to bury her alive and showing her videos depicting someone being buried alive, videos which were provided to Bagley by defendant, and refusing to permit her to use safe words or ignoring her safe words during torture and sex) to cause her to engage in a commercial sex act.

Based on all of the above, I find that 18 U.S.C. § 1591(a)(1) generally and as applied to the defendant in count two provides fair warning of the prohibited conduct and does not promote arbitrary enforcement.  Therefore, defendant's motion to dismiss should be denied.

### 18 U.S.C. § 1591(a)(2)

Defendant alleges that he did not benefit financially or by receiving anything of value as required by 18 U.S.C. § 1591(a)(2).  "Anything of value" is not defined by the statute. In the context of the Sentencing Guidelines, courts have found a "thing of value" (U.S.S.G. § 2G2.2) to include the ability to download files at a faster speed, United States v. Geiner, 498 F.3d 1104, 1110 (10th Cir. 2007), the expectation of a sexual

21

encounter, <u>Unied States v. Maneri</u>, 353 F.3d 165, 168 (2nd Cir. 2003), and the expectation of the receipt of child pornography through a file-sharing network, <u>United States v. Griffin</u>, 482 F.3d 1008, 1011 (8th Cir. 2007).

Here defendant is alleged to have engaged in sexual acts with and torture of the victim, witnessed others engaging in sexual torture of the victim, and downloaded pictures of the victim distributed by Edward Bagley.  Defendant, in turn, is alleged to have provided Edward Bagley with images of females whom defendant had bound and beaten and he provided Bagley with videos depicting someone being buried alive -- which was in turn used by Bagley to coerce FV into compliance.  As it is common knowledge that people will pay money for sex and for pictures of someone engaging in sex acts, it is hard to comprehend defendant's argument that these were not "things of value." Accordingly, 18 U.S.C. § 1591(a)(2), as applied to defendant, provides adequate notice that his conduct constituted a violation.  Further, the statute is not prone to arbitrary enforcement.  Therefore, the application of 18 U.S.C. § 1591(a)(2) to count two is not unconstitutionally vague, and defendant's motion should be denied on this alternate basis.

### *18 U.S.C. §§ 1594 and 2 – Attempt and Aiding and Abetting*

Defendant was not only charged with directly violating § 1591 in count two, but also as an aider and abetter and as

someone who attempted to commit the crime, in violation of §§ 2 and 1594.[3]  Because both § 2, aiding and abetting, and § 1594, attempt, are also charged, the government must only prove that the defendant aided and abetted co-defendant Edward Bagley or intended to commit a violation of § 1591 and took a substantial step towards the completion of that crime.

To sustain an aiding and abetting conviction, the government must prove that (1) the defendant associated himself with the unlawful venture, (2) the defendant participated in it as something he wished to bring about, and (3) the defendant sought by his actions to make it succeed.  United States v. Ruiz-Zarate, 768 F.3d 683, 690-691 (8th Cir. 2012); United States v. Turner, 583 F.3d 1062, 1067 (8th Cir. 2009).  "A fundamental theory of American criminal law is that there is no offense of aiding and abetting or accomplice liability as such. . . .  Whether one is convicted as a principal or as an accomplice/aider and abettor, the crime of which he is guilty is the same: whatever is the underlying offense." United States v. Baca-Valenzuela, 118 F.3d 1223, 1232 (8th Cir. 1997) (italics omitted). 18 U.S.C. § 2 does not establish a separate offense, but rather imputes the actions of the principal to the aider and abettor as a matter of law.

---

[3]18 U.S.C. § 1594 provides in relevant part, "(a) Whoever attempts to violate section . . . 1591 shall be punishable in the same manner as a completed violation of that section."

United States v. Yielding, 657 F.3d 688, 719 (8th Cir. 2011);

United States v. Stands, 105 F.3d 1565, 1577 (8th Cir. 1997).

The government's allegations[4] in the superseding indictment are sufficient for a conviction under 18 U.S.C. §§ 1594 and 2. The actions attributed to co-defendant Edward Bagley show an unlawful venture and can be imputed to defendant Cook. The superseding indictment states, among other things, that defendant communicated with co-defendant Edward Bagley regarding sexual torture activities, he witnessed and participated in sexual torture of the victim, and he shared ideas and videos with co-defendant Edward Bagley on how to sexually torture FV and how to coerce her into compliance with threats of being buried alive and videos showing someone being buried alive. These allegations cover the elements of aiding and abetting and of attempt.

Accordingly, 18 U.S.C. §§ 1594 and 2, as applied to defendant, provide adequate notice that his conduct constituted an attempt to violate 18 U.S.C. § 1591 and that his conduct constituting aiding and abetting a violation of 18 U.S.C. § 1591.

---

[4]Although they are called "allegations" here, I note that defendant has already pled guilty to count two, which means he has admitted that the allegations are true. As count two incorporates count one, all of the allegations discussed in this Report and Recommendation are actually established facts.

### III. CONCLUSION

Based on all of the above, I find that 18 U.S.C. § 1591, as applied to defendant, provides adequate warning that defendant's conduct was prohibited by the statute and it does not encourage arbitrary and discriminatory enforcement. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to dismiss count two as unconstitutionally vague.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has 14 days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
May 6, 2013